JOHN A. SHOWEN, Administrator of the Estate of CYRUS C. ARMSTRONG, Deceased, Respondent, v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

**Kansas City Court of Appeals, May 27, 1912.**

1. **NEGLIGENCE: Death of Plaintiff: Abatement of Action.** Plaintiff sued for damages for injuries received when thrown from the rear of a street car by the sudden starting of the car as he was about to alight therefrom at a regular stopping place. The case was partially tried and continued. Thereafter plaintiff died and the cause was revived in the name of the administrator, who filed an amended petition which did not contain any allegation that the death of his intestate did not result from the injury. *Held*, that such an allegation was indispensable to his right to continue the suit.

2. ————: ————: ————. The statute, Sec. 5438, R. S. 1909, being in derogation of the common law, must be strictly construed and the burden is on the administrator to establish by proof his right to maintain the action.

3. **Evidence: Death of Witness: Stenographer's Notes.** Where the party against whom is offered evidence of the testimony given by a witness at a former trial, had the opportunity of confrontation and cross-examination, the evidence is competent, first, in instances where the witness is dead; second, where he is insane or mentally incapacitated; third, where he is beyond seas; and fourth, where he has been kept away by the connivance of the opposite party.

Appeal from Jackson Circuit Court.—*Hon. James E. Goodrich*, Judge.

REVERSED AND REMANDED.

*John H. Lucas* and *Boyle & Hogsett* for ·appellant.

(1)   The cause of action was not shown to have been one which could survive the death of the original plaintiff, Armstrong.   Elliott v. Kansas City, 210 Mo. 576; Millar v. Transit Co., 216 Mo. 99, 104; Behen v. Transit Co., 186 Mo. 430, 445; Bates v. Sylvester, 205 Mo. 493; R. S. 1909, Sec. 106; Vawter v. Railroad, 84 Mo. 679; Oates v. Railroad, 104 Mo. 514; Strottman v. Railroad, 211 Mo. 227.   (2)   The defendant's demurrer to plaintiff's evidence, which was also renewed at the close of all of the evidence, should have been sustained.   Scroggins v. Railroad, 138 Mo. App. 215; Gurley v. Railroad, 104 Mo. 233; Nugent v. Milling Co., 131 Mo. 253; De Maet v. Storage Co., 121 Mo. App. 104; Stafford v. Adams, 113 Mo. App. 721; Barnard v. Railroad, 137 Mo. App. 684.   (3)   The court erred in admitting the transcript of the stenographer's notes of Armstrong's former testimony.   Byrd v. Hartman, 70 Mo. App. 57; Dempsey v. Lawson, 76 Mo. App. 522; Sevier v. Allen, 80 Mo. App. 187; Craig v. Scudder, 98 Mo. 664.

*E. E. Aleshire, John S. Showen* and *R. S. Robertson* for respondent.

JOHNSON, J.—On March, 6, 1908, Cyrus C. Armstrong commenced this suit in the circuit court of Jackson county to recover damages for personal injuries. he alleged were caused by the negligence of defendant. The injury occurred October 16, 1907, and the petition alleged that it was caused by the negligence of defendant in suddenly starting a street car which had been stopped at a regular place for the reception and discharge of passengers while the plaintiff was in the act of alighting.   The answer was a general denial.   There was a trial of the cause in March, 1909, at which plain-

tiff appeared both as a party and as a witness. For some reason, not important now, that trial did not result in a judgment and the cause was set for retrial. On August 25, 1909, while the cause was pending the plaintiff died and on the 25th day of September following the court entered an order reviving the cause in the name of the administrator of his estate and thereafter the action was prosecuted by the administrator as plaintiff. An amended petition was filed by the administrator which repeated the allegations of the original petition respecting the cause of action and in addition alleged the facts of the death of Armstrong, the appointment of the administrator and his substitution as plaintiff. The amended petition contained no averment that the death of Armstrong did not result from the injury caused by the pleaded negligence. Defendant did not attack the amended petition by demurrer but filed an answer in the nature of a general traverse.

At the trial counsel for defendant objected to the introduction of any evidence on the ground "that the petition does not state a cause of action, because under the common law an action for personal injury did not survive the death of the injured party and because the statute under which this is sought to be revived only revives a certain class of cases and there is no plea or allegation in this petition that shows that the case falls within that class." The objection was overruled, defendant excepted and the court proceeded with the trial.

The principal evidence introduced by plaintiff was the testimony of Armstrong given at the former trial. Plaintiff introduced as a witness the official stenographer of the circuit court who reported that trial and he testified that he took the testimony in shorthand and had with him a transcript of his notes. He was interrogated by counsel for defendant as follows: "You have no independent recollection of what Mr.

Armstrong testified to, have you, Mr. Jetmore? A. Only some portions of it. Q. Of course you sometimes make mistakes in transcribing? A. Very frequently, but not any more so than the rest of them. Q. But that is as near correct as usual under similar circumstances? A. Yes, sir, I presume it is. There may be some typographical errors or small errors but I tried to make it correct. Q. You would not say on your oath that the transcript you have been shown is a literal reproduction of the testimony of Mr. Armstrong, would you? A. Pretty near. Q. But not absolutely so? A. Yes, I guess it is a transcript of the testimony, Mr. White. Of course, I do make mistakes, but I took his testimony and I think I got it all.''

Plaintiff then attempted to have the witness testify from memory to the testimony given by Armstrong by using the transcript of his notes to refresh his memory, but this method of examination was not successful and over the objections of defendant the court finally permitted plaintiff to introduce the transcript in evidence. The ground of the objection thus was stated by counsel: ''Because it is hearsay evidence and because there is no provision, either of the common law or of the statutes, authorizing the reading of such a transcript as the evidence of a witness and because it is incompetent, irrelevant and immaterial.''

The facts of the injury as stated in the transcript thus may be stated: Mr. Armstrong, a Presbyterian minister living at Stanberry, was attending a synod at Kansas City and was on his way from a meeting of the synod to his lodgings at the time of his injury. He became a passenger on a southbound Rockhill car operated by defendant intending to alight at Thirty-fourth and Main streets, a regular stopping place. He was a stranger in Kansas City and was not familiar with its streets. He sat in a rear seat next to the vestibule where the conductor stood when not engaged

in collecting fares and when the car stopped at Thirty-fourth street he asked the conductor who was in the vestibule if that was Thirty-fourth street and receiving an affirmative answer arose from his seat and proceeded to alight. He testified: "The door was ajar and I stepped to the doorway and across the vestibule and I had one foot on the step and the other extended to step to the pavement and the car lurched forward and threw me to the pavement." The car was headed south and Mr. Armstrong in going down the steps to the pavement was facing west. He states that he was not holding to a handhold and that the sudden motion of the car threw him in such manner that he fell to the pavement with his head to the west and his body extended in an east and west direction.

The principal injury he sustained was a fracture of the ball and socket joint in the left hip. The evidence of defendant is to the effect that Armstrong came out of the car to the vestibule, proceeded down the steps and attempted to step to the pavement, all before the car had reached the stopping place and while it was running at a speed of three or four miles per hour.

The injury was very severe and plaintiff suffered pain and was lame from it to his death. He was in good health before the injury and thereafter his health seemed steadily to decline until he died.

The specific cause of his death is not shown but a very strong inference arises from the evidence that the injury was the cause. The opposite inference also might be drawn and the issue of the causal relation of the injury to the death appears from all the evidence as a question of fact. At the request of plaintiff the jury were instructed: " . . . that if you believe and find from the evidence that on the 16th day of October, 1907, C. C. Armstrong, deceased, and former plaintiff in this case, was a passenger on one of defendant's cars proceeding southward on Main street

in Kansas City, Missouri, and that said car stopped at a point on said Main street, for the purpose of allowing plaintiff to alight therefrom, and that said place was a point where defendant was accustomed to stopping its cars for the purpose of taking on and letting off passengers; that while said car was so stopped, the said C. C. Armstrong, deceased, started to alight therefrom, and while in the act of alighting from said car, and before he had reasonable time within which to alight, defendant, by its agents and servants, suddenly and without warning, started its said car forward, thereby throwing the said C. C. Armstrong, deceased, to the pavement and injuring him while the deceased was at the time in the exercise of ordinary care for his own safety, then your verdict will be for plaintiff.

"By 'ordinary care' as used in the above instruction is meant such care as an ordinarily prudent person would exercise under like circumstances."

The jury returned a verdict for plaintiff in the sum of five thousand dollars and after its motions for a new trial and in arrest of judgment were overruled, defendant appealed.

I. Under the common law an action for personal injuries did not survive the death of the injured plaintiff and both the cause and an action to enforce it abated on his death occurring before the cause had merged into a judgment. [Elliott v. Kansas City, 210 Mo. 576; Millar v. Transit Co., 216 Mo. 99; Behen v. Transit Co., 186 Mo. 430; Bates v. Sylvester, 205 Mo. 493.] Therefore the right of the administrator to be substituted as plaintiff and to prosecute to judgment the action begun by his intestate if it exists at all, exists by virtue of some statute in derogation of the common law. It cannot be founded on section 105, Revised Statutes 1909, since the section following expressly excludes from the operation of that statute ac-

tions for injuries to the person of the plaintiff. Nor can it derive its existence from sections 5425 or 5426, since those sections deal only with cases where the death of the injured person resulted from an injury negligently inflicted by the defendant. It must rest, if at all on Section 5438, Revised Statutes 1909, enacted in 1907 (Laws 1907, p. 252) which provides:

"Causes of action upon which suit has been or may hereafter be brought by the injured party for personal injuries, other than those resulting in death, whether such injuries be to the health or to the person of the injured party, shall not abate by reason of his death, nor by reason of the death of the person against whom such cause of action shall have accrued; but in case of the death of either or both such parties, such cause of action shall survive to the personal representative of such injured party, and against the person, receiver or corporation liable for such injuries and his legal representatives, and the liability and the measure of damages shall be the same as if such death or deaths had not occurred."

This section does not apply to instances where the death of the injured person resulted from his injury nor to cases where the death was not caused by the injury but occurred before an action was commenced to recover damages on account thereof. In express language it applies only to actions pending at the time of the death of the plaintiff to recover damages for personal injuries which were not the cause of the death. In such cases the death of the plaintiff does not abate the action nor its cause but both survive to the personal representative of the deceased and such representative is entitled to be substituted in the action as plaintiff.

Of course the administrator has no right to be made plaintiff and to continue the action in his name if the death of his intestate resulted from the injury that created the cause of action. Being in derogation of the common law the statute must be strictly con-

strued and the burden is on the administrator to estab-
lish by proof his right to maintain the action under
the statute. To do that he must show affirmatively
that the death of his intestate was not caused by the
injury. The same rule applies to all of the damage
statutes in derogation of the common law, i. e., that the
right to sue or to maintain an action must be shown
by the one who asserts that he has such right.

Reference to two cases on this point decided in
this state will suffice. In Barker v. Railroad, 91 Mo.
86, an action on what is now section 5425, Revised Stat-
utes 1909, was before the Supreme Court. We quote
from the opinion: "It may be observed that damages
for a tort to the person, resulting in death, were not
recoverable at common law, nor could husband or wife,
parent or child, recover any pecuniary compensation
therefor against the wrongdoer. Our statute, on this
subject, both gives the right of action and provides the
remedy, for the death, where none existed at common
law, and where an action is brought, under the statute,
it can only be maintained subject to the limitation and
conditions imposed thereby. In conferring the right
of action, and in providing such remedy, in designat-
ing when, and by whom, suits may be brought, it was,
as a matter of course, competent for the Legislature
to provide and impose such conditions as it might
deem proper, and the conditions thus imposed modify
and qualify the right of recovery, or form, rather, we
think, a part of the right itself, and upon which its
exercise depends."

And further it is said: "In statutory actions of
this sort, the party suing must bring himself strictly
within the statutory requirements, necessary to con-
fer the right, and this must appear in his petition;
otherwise, it shows no cause of action."

In Dulaney v. Railway, 21 Mo. App. l. c. 599, this
court, speaking through ELLISON, J., said: "The right
of action given by sections 2121 and 2122, Revised Stat-

utes, is statutory. It did not exist at common law. Being created by the statute, one who sues must bring himself within the statutory terms. [McNamara v. Slavens, 76 Mo. 329.] The right of action in this case belongs to the father and mother in the event that there is no wife. The language of the statute is 'if such deceased be a minor and unmarried, then' the action inures to the father and mother. The principle announced in Barker v. Railroad, Supreme Court of Missouri, not yet reported, fully sustains this view."

Those decisions do not deal with actions pending at the death of the injured plaintiff and, consequently, do not touch the question that might arise in such cases of whether or not the administrator on being made plaintiff must file an amended petition alleging the constitutive elements of his right to prosecute the action but they are declarative of the rule that the burden is on him to establish by evidence the existence of such constitutive facts since he must, at all stages of the action, maintain his right to prosecute it to judgment. In the present case, the administrator relieved us of the duty of deciding the question we have just mentioned by voluntarily filing an amended petition. By so doing he abandoned the original petition and assumed the burden of pleading not only the elemental facts of the cause of action but also the facts on which depended his right to prosecute the action. In omitting to allege that the death of his intestate did not result from the injury he failed to allege a fact indispensable to his right to continue the suit. The defect was not cured by answer and could be made the subject of an objection to the introduction of evidence.

And further we find that the instruction of plaintiff which assumed to cover the whole case and to direct a verdict was erroneous in failing to submit the issue of whether or not the death of Armstrong was the result of his injury.

164 App.—4

II.   Next it is urged by defendant that the court erred in admitting in evidence the transcript of the testimony of Armstrong given at the former trial. The transcript was written by the court stenographer from his shorthand notes of the testimony and the stenographer testified that the notes were full and accurate and that the transcript was a true translation of them. He admitted there might be trivial typographical errors in the transcript such as might creep into any stenographic report however carefully taken, but the sum of his testimony is that the transcript contained a faithful and accurate reproduction of the testimony.

In Byrd v. Hartman, 70 Mo. App. 57, a case where the witness at the former trial was alive at the trial in question, we said: "We know of no authority that would authorize the reading in evidence by the official stenographer of a court his notes of the testimony of a party taken at a former trial of a case; and especially so where the party is alive and present in court. If the plaintiff made declarations or admissions in his testimony at the former trial of the kind shown by the stenographer, these, on laying the proper foundation therefor, could be proved by the testimony of the stenographer or that of any other person who heard them."

To the same effect were the later decisions of this court in Dempsey v. Lawson, 76 Mo. App. 522, and Sevier v. Allen, 80 Mo. App. 187.   These cases may be distinguished from the case in hand on the ground, if on no other, that in each of them the witness was alive at the time of the last trial and his testimony was procurable, while here, the witness was dead at the time of the last trial and the only accurate evidence of his testimony obtainable was in the notes of the court stenographer.

In Estes v. Railway, 111 Mo. App. 1, this court in an opinion by Judge BROADDUS, held that the stenographer's notes of the testimony of witnesses taken at

a former trial were admissible to contradict the testimony of the same witnesses at a subsequent trial and that the testimony of jurymen offered to contradict the witnesses was not admissible for the reason that the stenographer's notes were the best evidence. We quote from the opinion: ''Defendant contends that the best evidence of what these witnesses testified to was a transcript of the stenographer's notes taken at the time. We are cited to the case of Padgitt v. Railway, 159 Mo. 143; but that case does not decide the question. All that the court does say in that respect is: 'The purpose of having the testimony taken down in shorthand is to preserve it for future reference after a period has elapsed during which it might not be so well remembered,' etc. In Bradley v. Spickardsville, 90 Mo. App. 416, it was held by this court that the stenographer's notes were more accurate and reliable than the memory. And that case is not in conflict with the Padgitt case, supra, where the court held that it was error to have the stenographer's notes taken at the trial in progress read to the jury.

''It seems to us that the stenographer's notes were the best evidence of what the three witnesses testified to at the trial of the other cause. Formerly there was no other mode of contradicting a witness in that respect. But since the adoption of the statute providing for shorthand notes to be made of the evidence during the trial of a case, the former method becomes secondary in its character, because less reliable. It was, therefore, error to admit the secondary evidence when the best evidence was procurable.''

The rule that has the support of the great weight of authority is this: Where the party against whom is offered evidence of the testimony given by a witness at a former trial had the opportunity of confrontation and cross-examination, the evidence is competent, first, in instances where the witness is dead; second, where he is insane or mentally incapacitated;

third, where he is beyond seas; and, fourth, where he has been kept away by the connivance of the opposite party. And the best evidence of the testimony of such witness is the notes of the court stenographer when properly vouched for by the testimony of the stenographer. The stenographer is one of the legal officers of the court under oath to perform his duties faithfully. The same presumption of right acting applies to him as to other public officers and where he vouches under oath to the accuracy of his notes and of his translation it would be absurd to hold that the memory of witnesses who heard the testimony would be better evidence than the stenographer's notes when common observation and common sense would declare this is not so.

We find a most exhaustive discussion of this subject in Robertson v. State, 142 S. W. (Tex.) 533, and refer to that case and especially to the authorities reviewed in the opinion for a more comprehensive expression of our own views. Our conclusion is that the transcript was properly admitted.

III. We do not agree with the contention of defendant that ''the plaintiff's evidence is so at war with the conceded physical facts as to lack all probative force.'' It is the idea of counsel that as Armstrong was not holding to a handhold while stepping from the car his fall, as he described it, could not have been produced by a forward lurch of the car. The principal case relied on to support this contention is one decided by this court, viz., Scroggins v. Railway, 138 Mo. App. 215.

The difference between the physical facts of the two cases is apparent. We do not decide such cases on the physical facts except where it clearly appears that the plaintiff's version of the injury could not be true. We shall not weigh the evidence nor balance probabilities or possibilities. Wherever the inference

is permissible that the injury occurred in the manner claimed by the plaintiff, an issue of fact is made for the jury to determine. We see nothing unreasonable in the testimony of Armstrong and hold that it was sufficient to take the pleaded issue of negligence to the jury.

We find no other error in the record than that noted in the first paragraph of the opinion. The judgment is reversed and the cause remanded. All concur.