JULIA JORDAN, Administratrix of the Estate of JASPER N. JORDAN, Appellant, v. ST. JOSEPH RAILWAY, LIGHT, HEAT & POWER COMPANY.—73 S. W. (2d) 205.

Division One, June 12, 1934.

*W. J. Boyd, M. J. Duvall* and *Miles Elliott* for appellant.

*Mayer, Conkling & Sprague* for respondent.

STURGIS, C.—This is the second appeal in this case, a personal injury action based on negligence of the defendant, the injury being occasioned by defendant's street car colliding with an automobile driven by Jasper N. Jordan at the intersection of two streets in St. Joseph. On the first appeal the case was entitled Jasper N. Jordan, plaintiff, against this defendant, and discloses that shortly after his injuries Jasper N. Jordan instituted the action to recover damages for his own injuries, that the case was tried resulting in a verdict

and judgment for defendant, and that defendant then appealed from an order granting the plaintiff a new trial. That case is reported in 38 S. W. (2d) 1042, and resulted in this court sustaining the trial court in granting plaintiff a new trial. The plaintiff, Jasper N. Jordan, died pending that appeal and, as stated in that opinion, "After the appeal was lodged in this court the plaintiff died from causes not connected with the accident. His death was suggested and the case was revived (in this court) in the name of his administratrix." The case was remanded for new trial.

The present record discloses that the case again came on for trial in the circuit court, the petition being amended by interlineation by leave of court, under the title of Julia Jordan, administratrix of the estate of Jasper N. Jordan, deceased, against this defendant. The second trial resulted in a judgment for plaintiff in the sum of $10,000 and the trial court granted defendant a new trial on the ground of error in giving for plaintiff an instruction presently to be noted. The plaintiff is now appealing from that order. Although the administratrix became the substituted plaintiff in the proceedings on the second trial, we will, for convenience, use the word plaintiff as meaning the original plaintiff, Jasper N. Jordan. It will be well to keep in mind the chronology of these events, to-wit: Jasper N. Jordan was injured August 3, 1924. He filed his suit for damages September 6, 1924. The first trial in the circuit court was had at the January Term, 1928, where the verdict was for defendant, a new trial was granted plaintiff, and defendant appealed. After the appeal was lodged in this court, but before being heard here, Jasper N. Jordan, the plaintiff, died June 3, 1929. His death was suggested and this cause revived in this court by agreement of the parties December 31, 1929. The granting of a new trial to plaintiff was affirmed by this court May 21, 1931. The petition was amended in the circuit court by interlineation October 19, 1931. The second trial occurred October 21, 1931, resulting in a judgment for plaintiff and defendant was granted a new trial. Plaintiff has appealed and the case has again been argued and submitted near ten years after the injuries sued for were received.

As the former opinion contains a statement of the facts connected with the injury of Jasper N. Jordan, it will not be necessary to go into detail. It will suffice here to say that the offending street car was traveling northeast on Lake Avenue, a street running northeast and southwest; that Jasper N. Jordan was driving his automobile west on Ohio Street, an east and west street, and that a collision occurred at the intersection, resulting in his injury. In his original petition a number of grounds of negligence on the part of the motorman operating the street car were alleged, such as running the street car at a high and dangerous rate of speed in violation of a city

ordinance; failure to sound a gong on approaching the street crossing or persons or vehicles using the same as required by ordinance; failure to observe the vigilant watch ordinance and to stop the car or slacken the speed thereof on the first appearance of danger, etc. The petition also alleges a violation of the humanitarian rule of negligence in that the motorman in charge of the street car saw, or by due care could have seen, Jasper N. Jordan in a position of danger and peril of collision in time to have avoided the same with the means and appliances at hand, especially by stopping the car or sounding the gong, but failed to do so. The defendant denied generally and alleged contributory negligence on plaintiff's part in driving his automobile onto the street car track in front of an approaching car in plain view.

On the former appeal this court held that the plaintiff could recover on defendant's primary negligence of operating the street car at twenty-five to thirty miles per hour and that plaintiff's contributory negligence in "approaching the track upon which the street car was running or so close to the street car track as to collide therewith," when he saw and knew the street car was coming, was a question for the jury, as plaintiff did not know how fast it was approaching and had a right to presume it was complying with the speed ordinance of not exceeding ten miles per hour. This court also there held that plaintiff could recover on the humanitarian rule and that the motorman did not have a right to rely on the plaintiff stopping his automobile before going onto the street car track, "provided the movement of the automobile or its manner of approach as it neared the crossing or the action of the driver indicated" that he was not going to so stop, that is, that plaintiff was oblivious of his danger.

It is apparent from the entire record that the issues presented by the pleadings were the same on the second trial as on the first and that the only change made in the petition was in the style or caption of the case in that where Jasper N. Jordan was designated plaintiff in the original petition, in the amended petition, so-called by defendant, the plaintiff was designated as Julia Jordan, administratrix of the estate of Jasper N. Jordan, deceased, and thereafter wherever the word plaintiff appeared in the body of the petition it was changed to Jasper N. Jordan. This change was made by interlineation before the second trial commenced. There is no allegation or even reference in the petition to the fact of Jasper N. Jordan being dead except as indicated in the caption, nor is there any allegation or reference in the body of the petition to an administratrix as being plaintiff or otherwise. Such allegations of the original petition as that plaintiff "will in the future suffer great bodily pain," "will be caused to lose much valuable time," "will in the future be caused to expend large sums on account of medicine and medical and surgical care," etc., were left intact and implied that plaintiff was yet living.

On the second or present trial the plaintiff abandoned all the allegations of primary negligence and submitted the case to the jury solely on the allegations of negligence constituting a violation of the humanitarian rule. It was in giving Instruction No. 1 for plaintiff on this subject that the trial court thought error was committed and granted defendant a new trial. That instruction reads in substance:

The court instructs the jury that if you find from the greater weight of the evidence that by the timely sounding of the gong on defendant's street car the motorman in charge thereof could have warned Jasper N. Jordan of the proximity of said street car and have thereby prevented the collision in question, and that in time to have so sounded such gong said motorman saw, or by the exercise of ordinary care could have seen, Jasper N. Jordan and his automobile in a place of danger and imminent peril on or approaching the street car track mentioned in evidence, and knew, or by due care could have known, that said street car would collide with said automobile unless he, said motorman, sounded the gong on said street car and thereby warned said Jasper N. Jordan of the proximity thereof, and that said motorman negligently failed to sound such gong, and that the collision in question was a direct result of such failure, and that said Jasper N. Jordan was thereby caused to be injured, then you must find for the plaintiff, and this is true even though you may further find that said Jasper N. Jordan was guilty of negligence in driving his said automobile into such a place of danger or imminent peril.

Defendant does not challenge the sufficiency of the proven facts to warrant the giving of this instruction but criticises the instruction itself. It is first insisted that the instruction is erroneous in not requiring the jury to find that Jasper N. Jordan did not die as a result of the injuries sued for, but the trial court did not grant defendant the new trial for this reason and this ground of error will be discussed in connection with a similar objection to the sufficiency of the so-called amended petition.

It is next said that the instruction mentioned is erroneous in not requiring a finding that plaintiff was oblivious to his peril in attempting to cross the street car track in front of the on-coming car. We readily agree that the element of obliviousness is essential to a case on the humanitarian doctrine for failure to warn. [Pentecost v. St. Louis Merchants' Bridge Terminal Railroad Co., 334 Mo. 572, 66 S. W. (2d) 533, and the cases there cited.] In the present case plaintiff testified that as he approached Lake Avenue going west on Ohio Street and when he was just entering the intersection he saw the street car in question some one hundred fifty feet southwest of the intersection but supposed it was running at a moderate rate of speed and that he would have plenty of time to cross the track ahead of the coming car. Plaintiff, therefore, gave no further heed to the

coming car, but looked for a possible car coming from the opposite direction, till he was right at the track and too late to avoid a collision. The motorman testified that he observed plaintiff's automobile approaching and that plaintiff slowed down as he entered the intersection and was looking at the street car and he supposed plaintiff would stop. The question of plaintiff being oblivious to the approaching danger was therefore important and a disputed fact.

As held on the former appeal, if it was apparent to the motorman that plaintiff was intent on crossing the street car track and was about to do so regardless of the on-coming car, then it was the duty of the motorman not to run him down but to avoid a collision if he could do so by sounding the gong and bringing plaintiff to a realization of his danger so that he in turn could avoid the collision. Unless plaintiff was oblivious to his peril, a warning signal could do no good. However, an examination of the instruction in question shows that it is not deficient in this respect. The instruction plainly requires a finding that the motorman not only saw, or should have seen, the plaintiff in a position of danger and imminent peril as he approached the street car track, but that the motorman also *knew,* or should have known, *that the street car would collide with the automobile* unless the motorman sounded the gong and thereby warned plaintiff of the proximity of such car. This expresses the idea conveyed by the term "oblivious to his danger" even more forcibly than would be done by the use of that term. Requiring the jury to find that plaintiff in approaching the street car track was oblivious to his danger, or rather that the motorman saw and knew he was so oblivious, would mean no more than that the motorman saw and knew that plaintiff was not going to stop before going upon the car track unless something was done to apprise plaintiff of his peril, and this the instruction required the jury to find. Moreover, the instructions must all be read together and if this instruction was lacking in clearness in this respect, it was made clear by defendant's Instructions H and I, which expressly required the jury to find that plaintiff was oblivious to his peril and that the motorman so knew. [Hulse v. Railway Co. (Mo.), 214 S. W. 150, 154; Davis v. City of Independence, 330 Mo. 201, 49 S. W. (2d) 95, 101.]

█ The next objection to this instruction is that it was confusing and misleading and therefore prejudicial in that it combined primary negligence (failure to warn) with the humanitarian doctrine, and plaintiff cites Freeman v. Berberich, 332 Mo. 831, 60 S. W. (2d) 393, and Sevedge v. Railroad, 331 Mo. 312, 53 S. W. (2d) 284, as holding it to be error in an instruction to commingle issues of primary negligence and negligence under the humanitarian rule. We do not think, however, that this instruction is confusing or misleading in the respects mentioned. The words and clauses of the instruction are per-

haps not in the usual order followed in stating the humanitarian rule, but that is not a matter of substance. The first clause of the instruction states the requirement that the motorman could have by the use of the gong warned plaintiff of his danger and thereby prevented the collision; and then further requires the finding that the motorman saw or could have seen plaintiff in a place of danger in time to have sounded the gong and then knew that there would be a collision unless such gong was sounded and plaintiff warned of the close coming car; and further that the motorman negligently failed to give such warning and that the collision was the direct result of such negligence. We do not see how the jury could be misled or confused by this instruction. These several findings of fact were necessary to constitute negligence under the humanitarian rule and were connected by the conjunctive "and" so as to require a finding of each and all. The closing clause of the instruction to the effect that if the defendant was negligent in the manner stated, plaintiff's contributory negligence would not be a defense, is so well established as to need no citation of authority. We must rule this point against defendant.

We agree to defendant's contention that liability under the humanitarian rule depends on whether the negligent act of failing to warn occurs *after* the motorman saw plaintiff or could have seen the plaintiff in a position of peril. The humanitarian rule seizes on the situation as it is when the motorman sees the plaintiff's situation of peril and takes no account of the negligence of either party prior to that time. [State ex rel. Fleming v. Bland, 322 Mo. 565, 572, 15 S. W. (2d) 798.] The instruction here meets this requirement in that the jury was required to find that "said motorman negligently failed to sound such gong" either after discovering plaintiff's position of peril or before. The greater includes the lesser, though the context shows that the failure to sound the gong referred to followed the seeing of plaintiff in his position of peril.

We must conclude, therefore, that the court was not justified in granting defendant a new trial for any error in giving this instruction.

It is contended, however, that there are other errors which made necessary and justified the trial court in granting a new trial to defendant. Instruction No. 2 given for plaintiff is said to be erroneous because widening the issues made by the pleadings. This instruction, as does Instruction No. 1, submits the case on the humanitarian rule of negligence, but the negligence is based on the motorman's failure to stop the car or slacken the speed thereof after discovering plaintiff's peril of collision. In charging defendant's negligence in this respect the petition charges that defendant discovered, or should have discovered, plaintiff's peril in time to have

*stopped* the street car and thereby prevented the collision, but does not charge that the same result could have been accomplished by slackening the speed of the car. The instruction makes defendant liable if this result could have been accomplished by either stopping the street car or lowering the speed thereof. We, of course, recognize the general rule that the instructions should not submit an issue not raised by the pleadings. [Kitchen v. Schlueter Mfg. Co., 323 Mo. 1179, 1195, 20 S. W. (2d) 676, and cases cited.]. In the case mentioned it is observed that an instruction is erroneous which allows a recovery upon an issue "neither alleged specifically in the petition, *nor within the general scope of the petition.''*. Defendant does not here attack this instruction as being in itself erroneous or as not being supported by the evidence or as misleading to the jury in any way, but only as having no corresponding allegation in the petition to support it. We have often said that the pleadings are addressed to the court and the prime object of the petition is to inform the defendant of the ultimate facts which the plaintiff intends to prove and which, if traversed, will constitute the issues of fact to be tried. The defendant is entitled to be thus informed before proceeding to a trial and to this end is entitled to demur if the facts stated are not sufficient to constitute a cause of action, or to a motion to make specific and definite if the facts are stated too generally and too indefinitely. It is a palpable injustice to expect or require a defendant to be prepared to meet an issue as to which he was not informed. But if the pleadings are addressed to the court (and the attorneys) the petition is not to be criticised too nicely in this respect. If an issue is within "the general scope of the petition," that is sufficient. The petition here, under the charge of primary negligence, specifically charges that the defendant "negligently failed to stop the street car or *slacken the speed thereof* and thereby avoid striking the automobile in which plaintiff was riding." Defendant was therefore advised that it must meet this charge. While it is true that in stating humanitarian negligence the plaintiff only charged that defendant could have *stopped* the street car, yet is it not a fair or rather necessary inference that if the motorman could have stopped the car, he could have slowed it down, if the same result could thereby have been accomplished? That defendant did understand that a failure to slacken the speed of the car, as well as to cause it to come to a full stop, was relied on as a basis of liability under the humanitarian doctrine is shown by its own Instructions G and H covering this theory.

■ It is next insisted that the verdict as returned by the jury was so defective and uncertain that it does not warrant the judgment entered for $10,000. The verdict is as follows:

"We, the jury, find for the plaintiff and assess the damages at the sum of Ten ($10000) dollars." (This is signed by nine jurors.)

On this verdict judgment was entered for plaintiff for $10,000. Defendant, within four days, filed its motion for new trial and assigned as error that the verdict of the jury is unintelligible, ambiguous, uncertain and without meaning, and that it cannot be determined what, if any, verdict the jury intended to render. Plaintiff, on the next day after the filing of the motion for new trial, filed by leave of court separate affidavits of each of the nine jurors who signed the verdict stating in effect that said nine jurors agreed upon $10,000 as the damages to be awarded plaintiff and that it was the intention of said jurors to return a verdict for plaintiff in that amount, but that in writing up the verdict the word "thousand" was erroneously and unintentionally omitted after the word "ten" in the verdict as returned. The affidavit of another juror who did not sign the verdict was also filed to the effect that $10,000 was the amount of damages agreed upon by the nine jurors signing the verdict and that they requested him to write up the verdict for that amount and that when he undertook to do so he unintentionally and inadvertently omitted the word "thousand" after the word "ten." The law is now well settled that the affidavit of jurors may be received in support of and to uphold the verdict, though not to contradict or destroy it. [Hays v. Hogan, 273 Mo. 1, 26, 200 S. W. 286, and cases cited.]

When this verdict is read in the light of these affidavits and when we remember that the suit is one for $50,000 damages for personal injuries of an unquestionably severe and permanent character resulting in long suffering and disability, if not the death, of Jasper N. Jordan, we think there can be no doubt but that the verdict was intended to be for $10,000 damages. The wording of the verdict in the case shows that it was intended to express the amount of damages in both words and figures and that the word "thousand" was unintentionally omitted after the word "ten," but that the amount is correctly stated in figures. A similar question was considered in Hays v. Hogan, 273 Mo. 1, 26, 200 S. W. 286, where this court said: "When we read the verdict in this case in the light of the affidavits filed, there can be no reasonable doubt but what the jury agreed upon the sum of $6,500 as the amount thereof. This is also manifest from the figures $6.500, the first sum stated therein, but when the attempt was thereafter made to state the amount in words, the scrivener wrote the words 'Six Thousand' and for some reason undisclosed added '$5.00 Dollars,' thereby making the entire verdict as to the amount, read, 'at the sum of $6,500, Six Thousand $5.00 Dollars.' It is perfectly clear from the face of the entire record, that is, the petition, answer, evidence, verdict and affidavits filed, that through inadvertence the scrivener placed the punctuation point before instead

of after the last two naughts found in the verdict. Had it been placed after them instead of before, both statements of the amount would have corresponded, and this question would not have been here; but as it stands, it contradicts the remainder of the verdict and the affidavits, but if transposed the entire verdict becomes harmonious and in keeping with the record, as before stated. This view of the verdict was taken by the Court of Appeals in the case of Gurley v. O'Dwyer, 61 Mo. App. 348." In Goff v. Hines, 207 Mo. App. 420, 424, 229 S. W. 221, the court said: "It is also true that if from a consideration of the whole of the record proper, if the appeal is taken without motions for new trial and in arrest of judgment being filed, or if such motions are filed and passed on by the trial court, then from the *whole record*, the meaning of the jury can be made clear and the judgment is based on what the jury actually found, it will be upheld. . . . [Grain Co. v. Britton, 202 Mo. App. 591, 209 S. W. 333.]" This ruling is in accord with the reasoning of the matter in Keyes v. C., B. & Q. Railroad Co., 326 Mo. 236, 31 S. W. (2d) 50. In Newton v. Railroad, 168 Mo. App. 199, 153 S. W. 495, relied on by defendant, no affidavits of jurors were filed or considered. It is suggested that the affidavits in support of the verdict were merely filed and not introduced in evidence, but as such affidavits are addressed to the court in aid of the verdict and were filed in the case by leave of court before the motion for new trial was passed on, we think that a failure to formally offer the same in evidence makes no difference. We heartily approve what was said in the last mentioned case as to the duty of the court and the attorneys to call the attention of the jury to discrepancies or omissions in verdicts at the time the verdict is returned so that same may then be corrected by the jury itself. Why this was not done in the present case, we do not understand. We also know that it is the common practice in trial courts for the verdict to be read to the jury when received and the jury be asked if such is their verdict, and this was doubtless done in this case so that the jury gave its assent to the verdict being in the sum of $10,000. The trial court was correct in refusing to grant a new trial on this ground.

█ The proposition that is most stressed in the briefs and argument here is that the court was justified in granting a new trial because the petition, amended by interlineation as we have noted, fails to state a cause of action in that it fails to state whether or not the injuries received by the original plaintiff, Jasper N. Jordan, resulted in his death. Defendant relies on the cases of Greer v. Railroad, 173 Mo. App. 276, 158 S. W. 740; Showen v. Street Railway, 164 Mo. App. 41, 148 S. W. 135, and Longan v. Kansas City Rys. Co., 299 Mo. 561, 571, 253 S. W. 758. We have noted that shortly after Jasper N. Jordan received the personal injuries in ques-

tion he commenced his action to recover damages therefor. His cause of action for personal injuries negligently inflicted on him is a common-law action allowed from time immemorial. That cause of action, by the same law, died with him. Except by statute creating such new cause of action, there is no such thing as a cause of action for personal injuries received resulting in the death of the person injured. This is true whether the person injured brought suit for his injuries before his death or not. If and when the injured person died, he had a suit pending for his injuries, both the suit and the cause of action terminated. The first remedial statute in this State on this subject was enacted many years ago and with some amendments exists today as Sections 3262, 3263 and 3264, Revised Statutes 1929. Speaking generally, these statutes provide for actions in damages for death by wrongful act. They not only describe what wrongful or negligent acts will support such an action but what persons may maintain the action and against whom the action will lie. [Longan v. Kansas City Rys. Co., 299 Mo. 561, 570, 253 S. W. 758.] It is now settled that the causes of action provided by these statutes are not either derivative, transmissible or survival causes of action, but are new causes of action springing into being and accruing on and by reason of the death of the party injured in favor of the persons named in the statute. [State ex rel. Thomas v. Daues, 314 Mo. 13, 29, 283 S. W. 51.; Entwhistle v. Feighner, 60 Mo. 214; Polk v. Krenning (Mo. App.), 2 S. W. (2d) 107.] As these statutes create new causes of action not existing at common law, no person could maintain a suit for damages for injury to the person of another resulting in death of the person injured except as the statute itself provides. [Downs v. United Rys. Co. (Mo.), 184 S. W. 995, 997; Freie v. St. Louis-San Francisco Ry. Co., 283 Mo. 457, 463, 222 S. W. 824.] Usually when death results from the injuries inflicted such death results so soon after the injuries that no suit is filed by the injured person himself, nor is such suit pending at his death. Later and by legislative act in 1907 a statute was enacted applying to common-law causes of action for personal injuries brought by the person injured when pending at the death of the injured person, providing that such causes of action should not, as at common law, abate by reason of the death of the injured party, but should survive to the personal representative of such injured party. This act takes note of the fact that the statutes we have mentioned, Sections 3262, 3263 and 3264, Revised Statutes 1929, provide for new causes of action in favor of certain named parties (relatives) being maintained for injuries resulting in death and excepts that class from its provisions. Such statute, being the one now under consideration, Section 3280, Revised Statutes 1929, so far as pertinent, reads:

"Causes of action upon which suit has been or may hereafter be

brought by the injured party for personal injuries, *other than those resulting in death,* whether such injuries be to the health or to the person of the injured party, shall not abate by reason of his death, . . . but in case of the death of . . . such party, such cause of action shall survive to the personal representative of such injured party, and against the person . . . liable for such injuries . . . and the liability and the measure of damages shall be the same as if such death or deaths had not occurred."

The present case falls within the terms of this statute and under its provisions survives to the personal representative, the administratrix, unless it falls within the class excepted therefrom, to-wit, causes of action for personal injuries resulting in death. If, therefore, the injury received by Jasper N. Jordan did result in his death, or, in other words, if he died from the personal injuries for which he had brought suit, then the pending cause of action for such injuries would not survive to his personal representative, his administratrix, but would abate; and any cause of action *based on his wrongful death* would be a new cause of action created by Sections 3262 and 3263, Revised Statutes 1929, accruing on and by reason of his death and could be maintained, not by his personal representative for the benefit of his estate, but only by his widow, this plaintiff, as such and for her own benefit as provided by said statute. [Longan v. Kansas City Rys. Co., 299 Mo. 561, 569, 253 S. W. 758.] When, therefore, Jasper N. Jordan died after bringing his suit for his own injuries, which suit was then yet pending, although the injuries were received some five years previous, and his suit therefor brought and tried the first time had been pending all that time in the circuit court and in this court on plaintiff's appeal, yet there was a *possibility* that his death resulted from his injuries negligently inflicted by defendant, and if so the pending cause of action would abate and not survive to his personal representative; and a new action based on his death would accrue to his widow as such. When, therefore, Jasper N. Jordan died, it was up to his widow to determine whether the injuries received by him resulted in his death or whether his death resulted from other causes, and the form and nature of any further suit growing out of such injuries must be determined accordingly.

What was done was this: When Jasper N. Jordan died his case was pending in this court on defendant's appeal from an order granting plaintiff a new trial and that case was by agreement revived in this court in the name of his personal representative under the provisions of Sections 1054, 1055 and 1056, Revised Statutes 1929, relating to procedure on appeals in this court. We do not say, however, that such action in so reviving the case in this court must necessarily determine the question of what procedure would or should be taken in the case provided this court should hold, as it did, that Jasper N.

Jordan was entitled to a new trial. Such reviver in this court was necessary to enable this court to determine whether Jasper N. Jordan was entitled to such new trial of *his* cause of action. This court, however, did say on that appeal (Jordan v. St. Joseph Ry., Light, Heat & Power Co., 38 S. W. (2d) 1042) that "after the appeal was lodged in this court the plaintiff died *from causes not connected with the accident.*" After the mandate affirming the action of the trial court in granting the plaintiff a new trial in the case mentioned reached the trial court the parties prepared for a new trial. Not till the eve of the second trial was any action taken as to the pleadings, and then, as we have stated, plaintiff amended the petition by interlineation as to the title or caption of the case but not as to any allegations in the body of the petition. The case was tried on the cause of action stated by Jasper N. Jordan as to his own injuries.

It is clear that the present plaintiff elected to proceed on the theory that the death of Jasper N. Jordan did not result from the injuries he had received and for which he had brought suit, and therefore the then pending suit based on his injuries did not abate but survived to her as his personal representative for the benefit of his estate, and that defendant's liability and the measure of damages would be the same as if Jasper N. Jordan had not died. To that end and recognizing that the case had already been revived in this court pending the appeal in her name as administratrix, she merely substituted her name as administratrix in place of Jasper N. Jordan and proceeded to try the case as a continuation of the suit brought by Jasper N. Jordan for the benefit of his estate. She did not elect to bring a new suit as widow under the wrongful death statute for the death of Jasper N. Jordan, as she might and should have done if his injuries caused his death, in which the measure of damages would be the loss to her caused by his wrongful death and the amount recovered be for her own benefit. While the petition did not specifically allege that Jasper N. Jordan did not die as the result of his injuries, the allegations, being those made by Jasper N. Jordan for his own injuries, are wholly inconsistent with and contradictory of that fact.

The record further shows that before the trial was commenced the parties had agreed that Jordan's death did not result from the injuries described in his petition and had agreed to have the record on the new trial show that fact. The point under consideration was first raised when plaintiff, Mrs. Julia Jordan, widow and administratrix, was called as a witness. After testifying that she was the wife and is the widow of Jasper N. Jordan and had been appointed administratrix of his estate, she testified that he was injured August 3, 1924, and died June 3, 1929; that she was prosecuting this case as administratrix. When asked to describe his injuries she did so and said that while he went back to work in about a month, "he

continued to complain of pain in his head and chest as long as he lived'' and ''that he kept getting weaker and weaker till he died.'' This statement was seized on by defendant's attorney and on cross-examination the witness was asked if she took the position that her husband's injuries had anything to do with his death. Plaintiff's counsel promptly stated that ''it is not contended here that the injuries were the immediate cause of his death.'' Nevertheless, the witness answered, ''If it was not for that he would be alive today.''

In the colloquy that followed it was then admitted by the respective attorneys that it had been agreed that the record should show ''that plaintiff was not contending that the injuries received by Jasper N. Jordan on the occasion in question caused his death.'' The whole trouble seems to have arisen from plaintiff as a witness stressing too strongly the severity and duration of her husband's injuries. Her expression that he would have lived longer except for these injuries was merely an opinion. Plaintiff's other evidence was to the effect that the injuries were not such as to cause death. Plaintiff's counsel should perhaps have been more frank in having the record from the beginning show the agreement in this respect. There is no reason, however, why we should not treat the case as having been tried on a solemn agreement of record that the injuries received by Jasper N. Jordan in the collision of the street car and his automobile did not result in his death. However necessary it may be that, in a suit based on personal injuries prosecuted after the injured party has brought suit for his injuries and then died, the petition should show whether or not the death resulted from the injuries, we think that on the present record, on the principles of waiver and estoppel, defendant is not in a position to take advantage of the defect. In a somewhat similar condition of the pleadings and record in Roth v. St. Joseph, 180 Mo. App. 381, 386, 167 S. W. 1155, the court said: ''But an examination of the record discloses that both plaintiff and defendant tried the case expressly claiming that her death did not result from the acts complained of. This cured any failure, on the part of either the petition or the evidence, to show that her death did not result therefrom. Nor was it necessary to include anything of the kind *in plaintiff's instructions,* since it was not an issuable fact in the case.'' And on motion to transfer that case to this court as being in conflict with Greer v. Railroad, 173 Mo. App. 276, 158 S. W. 740, the court further said: ''We are not holding in this case that when a suit for personal injuries is revived in the name of the plaintiff's administrator the petition need not state that the personal injuries did not result in death. All we are holding is that, under the allegations of this petition, and the course pursued by defendant, the objection that the petition did not contain an allegation specifically and affirmatively stating that the nuisance did not result in

death, cannot now be raised by defendant for the first time in the appellate court.'' Defendant is insisting here that this defect of the petition amounting to a failure to state facts sufficient to constitute a cause of action can be raised at any time. Neither in the Greer case nor in the Showen case, supra, relied on by defendant, nor in any other case, did the court hold that this defect in pleading or evidence could not be waived or the defendant estop himself to rely on it. It might be noticed also that Jasper N. Jordan died June 3, 1929, and that any action by the widow or dependents under the wrongful death statute must have been brought within one year from the death of the injured party. At the time of the second trial, therefore, any such cause of action was barred by limitation. [Coover v. Moore & Walker, 31 Mo. 574; Kennedy v. Burrier, 36 Mo. 128, 130.]

We therefore reach the conclusion that the case was fairly tried and without prejudicial error and that the trial court erred in granting defendant a new trial. The case is therefore reversed and remanded with directions to reinstate the verdict and to enter judgment for plaintiff for $10,000. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by STURGIS, C., is adopted as the opinion of the court. All the judges concur, except *Gantt* and *Frank, JJ.,* who concur in result.