ELMER BOATRIGHT, Plaintiff-Appellant, v. THOMAS R. BRUENING, Defendant-Respondent, No. 42889—251 S. W. (2d) 709.

Division One, October 13, 1952.

*Goldenhersh & Goldenhersh* for appellant; *Orville Richardson* and *Hullverson & Richardson* of counsel.

*Ernest E. Baker* for respondent.

HYDE, P.J.—Action for $10,000.00 damages for personal injuries. Judgment on verdict for defendant from which plaintiff appeals. The only question for decision is whether instruction No. 3, given at defendant's request, was prejudicial error.

Plaintiff was injured while riding in a car, owned and driven by a fellow employee, (Luebbert), going home from work, about 9:00 A. M. Plaintiff and Luebbert both testified that they were driving north on California Street in St. Louis, upgrade, 20 to 25 miles per hour, on their right (east) side of the street, that defendant's car came from the north, downgrade, on its right (west) side of the street, also about 20 to 25 miles per hour; and that, when defendant's car was about 25 feet from the Luebbert car, it came across the white line in the center of the street and struck their car. Plaintiff's evidence also was that Luebbert attempted to turn away (toward the curb) but there was no time to get out of the way; and that defendant made statements in the ambulance on the way to the hospital that he fell asleep and that he blacked out. Defendant had worked on a night shift from midnight until after 8:00 A. M.

Defendant's evidence was the same as to the speed of the two cars, but also was that "another car following Mr. Luebbert's car swung out with the intention of passing him, and he cut over to my side of the road." Defendant said: "When I saw the car pull out from behind Mr. Luebbert's car I don't remember too clearly, but I do remember seeing this opening between the two cars, and apparently I tried to go into that opening." He said he was made unconscious and had no positive recollection of the collision but denied that he fell asleep before the occurrence. Defendant did admit making the following statement to the police: "I was driving south on California and when in about the middle of the block everything went black, causing me to lose control of my car and struck head on into vehicle #2." Defendant estimated that his car was 15 or 20 feet from the Luebbert car when the third car pulled out from behind it, and that it was only five or six feet from the Luebbert car, going about 35 miles per hour. Defendant said there were no cars parked along the west curb to prevent him from turning to the right. Defendant also had evidence that the third car struck the back of the Luebbert car. Defendant had witnesses, living in the neighborhood, who heard the noise of the collision (but did not see the cars until after the collision) who testified as to the position of the cars thereafter and as to the presence of the third car behind the Luebbert car.

The negligence submitted was that defendant "drove his automobile across the [711] center of said California and on the east side of said California, and into the line of the north traffic and drove his automobile into and against the automobile in which plaintiff was riding, and that in driving his automobile across the center of said California Avenue, plaintiff failed to exercise the highest degree of care and was negligent."

Instruction No. 3 was as follows: "The Court instructs the jury that if you find and believe from the evidence that plaintiff was riding in an automobile being operated north on California Avenue at the time mentioned in evidence and that defendant was operating an automobile south on California at said time and place and that defendant's automobile turned to the east of the center of California Avenue and that said automobiles collided and that plaintiff was thereby injured;

"Nevertheless, if you further find and believe from the evidence that another automobile was being driven north on California Avenue to the rear of the automobile in which plaintiff was riding and that the driver of said automobile was attempting to .pass the automobile in which plaintiff was riding, and that said automobile pulled over to the west side of California and directly into the path of defendant's automobile and so close to defendant's automobile that there was imminent danger of collision between said automobile and defendant's

automobile, and if you find that defendant was thereby confronted with a sudden emergency, with no time to deliberate, if you so find, then the Court instructs you that defendant was only required to exercise that degree of care that a very careful and prudent person would exercise under the same or similar circumstances, and if you find he did exercise such degree of care in turning his automobile to the east of the center of California Avenue, under the circumstances aforesaid, then the Court instructs you defendant was not negligent.''

The Court also gave a sole cause instruction, at defendant's request, which hypothesized the same facts as instruction No. 3, which required the jury to find that the negligence of the driver of the third car was the sole cause of the collision and which also required a finding ''that defendant did not commit any act of negligence submitted to you in other instructions.''

It is contended that instruction No. 3 has the same defect as the instructions discussed in our recent cases of Grace v. St. Louis Public Service Co., 249 S. W. (2d) 409; McDonnell v. St. Louis Public Service Co., 249 S. W. (2d) 412; and Rohde v. St. Louis Public Service Co., 249 S. W. (2d) 417; namely, it limits the jury to what was done after the emergency arose in determining negligence. As we said in the Rohde case (249 S. W. (2d) 1. c. 420): ''The emergency doctrine has no application and may not be asserted if the emergency arises wholly or partially from the negligence of the one who seeks to invoke the doctrine.'' As we also pointed out therein, an emergency is not a defense but is instead only a factor to be considered in determining whether a person's action was negligent. (See A.L.I. Restatement of Torts, Sec. 296.) It is true that instruction No. 3 makes no requirement for finding that defendant was driving with the highest degree of care prior to the emergency or that defendant's conduct did not contribute to cause the emergency, which would be a proper and usually an essential element of an emergency instruction. Furthermore, the closing clause of the instruction (''if you find he did exercise such degree of care in turning his automobile to the east of the center of California Avenue, *under the circumstances aforesaid,* then the Court instructs you defendant was not negligent'') very definitely refers only to the emergency situation previously hypothesized therein as ''the circumstances aforesaid.'' (See Rohde case, 249 S. W. (2d), 1. c. 421.) This emphasizes the idea of determining negligence on what was done after the emergency arose; and there was evidence of prior inattentiveness on the part of defendant.

Nevertheless, there are some important differences between the above cited cases and this case. In the first place, these cases were res ipsa loquitur cases, and it [712] was clearly erroneous for the instructions therein to exclude any reasonable inference as to negli-

gence in maintenance as a cause of the emergency. Furthermore, we think instruction No. 3 herein hypothesizes facts which, under the circumstances of this case, would exclude any negligence of defendant in creating the emergency. In other words, if the jury found the facts to be as hypothesized in instruction No. 3, then defendant's prior negligence (which could only have been inattentiveness) could not have caused or contributed to cause the emergency. This is true because plaintiff's own evidence showed that defendant was driving on the right side of the road and at a reasonable rate of speed prior to the emergency. Therefore, defendant's inattentiveness would not have been a contributing cause of the emergency if the facts were that a third automobile "was attempting to pass the automobile in which plaintiff was riding, and that said automobile pulled over to the west side of California and directly into the path of defendant's automobile and so close to defendant's automobile that there was imminent danger of collision between said automobile and defendant's automobile, and * * * that defendant was thereby confronted with a sudden emergency, with no time to deliberate." These facts would show the creation of an emergency solely by the acts of a third party so suddenly that nothing defendant did or failed to do could have contributed to cause it; and thus would exclude any reasonable inference of negligence on the part of defendant in creating the emergency. (See Lukitsch v. St. Louis Public Service Co., 362 Mo. 1071, 246 S. W. (2d) 749.)

Defendant's evidence supports the facts hypothesized because he testified that the third car pulled out when it was only five or six feet behind the Luebbert car and when his car was only 15 or 20 feet from the Luebbert car. Thus there was not more than 25 feet, plus the length of the Luebbert car, between defendant's car and the third car when it came on to defendant's side of the street at 35 miles per hour. If these were the true facts then nothing defendant did or failed to do could have contributed to cause the emergency because under these facts the emergency would have been created anyway by that act of the driver of the third car at that time and in that space. Defendant had the right to submit the facts which his evidence tended to prove for the jury's consideration on the question of whether he was negligent in turning across the center of the street, which was the only negligence submitted by plaintiff. We hold that instruction No. 3 properly submits defendant's theory that his act in turning to the left (submitted by plaintiff as his negligence) took place after the emergency arose and because of it; and that the facts required to be found exclude defendant's prior negligence, if any, as a contributing factor to the emergency. Therefore, the lack of any specific exclusion of defendant's negligence in the instruction could not have been prejudicial.

500

Plaintiff also criticises the use of the words "sudden emergency" in the instruction. Plaintiff says this term is a "color word" with an emotional quality, which conveys a definite sense of unavoidability. An emergency instruction certainly would not be good if it did not convey the concept of unavoidability. A good instruction can be written on this theory without using the term "sudden emergency" (see Filkins v. Snavely, 359 Mo. 356, 221 S. W. (2d) 736) just as a good sole cause instruction can be written without using that term. (See Janssens v. Thompson, 360 Mo. 351, l. c. 361, 228 S. W. (2d) 743, l. c. 749.) However, the term "sudden emergency" is an expressive term, not difficult to understand, and should help to make the factual situation and the applicable legal principle clear to laymen, which should be the purpose of jury instruction. We do not think this purpose is necessarily accomplished best by using only dry technical, legalistic language. We cannot, therefore, condemn the use of these words in this instruction.

The judgment is affirmed. All concur.