Clyde HARRIS, Administrator of the Estate of Alma Harris, (Plaintiff) Respondent,

v.

Ernest (Pete) GOGGINS, Charles Louis Woodruff, Banks Ray, Sr., Banks Ray, Jr., doing business as Nashville Produce Company, Raymond Caldwell and David Caldwell, Defendants,

Ernest (Pete) Goggins, Appellant.

Clyde HARRIS, Administrator of the Estate of Alma Harris, Appellant,

v.

Ernest (Pete) GOGGINS, Charles Louis Woodruff, Banks Ray, Sr., Banks Ray, Jr., doing business as Nashville Produce Company, Raymond Caldwell and David Caldwell, Defendants,

Charles Louis Woodruff, Banks Ray, Sr., Banks Ray, Jr., doing business as Nashville Produce Company, Raymond Caldwell and David Caldwell, Respondents.

Nos. 31095, 31096.

St. Louis Court of Appeals.

Missouri.

Dec. 18, 1962.

On Motion for Rehearing or to Transfer to Supreme Court Jan. 25, 1963.

Dearing, Richeson & Weier, H. L. C. Weier, Hillsboro, for Ernest (Pete) Goggins.

McClintock & Medley, Charles W. Medley, Flat River, for Clyde Harris.

Roberts & Roberts, J. Richard Roberts, Farmington, for Charles Louis Woodruff, Banks Ray, Sr., and Banks Ray, Jr.

Morris E. Stokes, Moser, Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, for Raymond Caldwell and David Caldwell.

RUDDY, Acting Presiding Judge.

This is an action instituted by Clyde Harris, Administrator of the Estate of Alma Harris, to recover damages for personal injuries sustained by Alma Harris in her lifetime alleged to have been caused by the negligence of defendants. Joined as defendants were Ernest (Pete) Goggins; Charles Louis Woodruff, Banks Ray, Sr., and Banks Ray, Jr., doing business as Nashville Produce Company; and Raymond Caldwell and David Caldwell. A trial before a jury resulted in a verdict and judgment in favor of plaintiff against defendant Goggins in the sum of $5500, and against plaintiff and in favor of all other defendants. Defendant Goggins has appealed from the judgment entered against him and plaintiff has appealed from the judgment entered in favor of the other defendants.

Alma Harris had been a patient in Barnes Hospital in the City of St. Louis from July 3, 1959, to July 31st, 1959. In this hospital an operation was performed on her dorsal spine, at which time a metastatic cancer was found. Following this surgery Alma Harris became paralyzed in her lower extremities. On the day the collision took place, viz., July 31, 1959, she was being transported in an ambulance driven by David Caldwell, who was in the employ of Raymond Caldwell, from Barnes Hospital to her home in Flat River, Missouri. In the course of transporting Alma Harris from Barnes Hospital to her home, the ambulance was driven southwardly on Highway 67 and when near its intersection with Cantwell Lane in St. Francois County, which lane is for east and west bound traffic, David Caldwell saw a northbound truck on Highway 67 when it was about three feet across the center line of the highway. David Caldwell swerved the

ambulance toward the shoulder of the road to avoid the truck. The ambulance was struck by the truck at a point north of the intersection.

Prior to the approach of the ambulance to the intersection of Cantwell Lane and Highway 67, defendant Goggins had been driving eastwardly on Cantwell Lane. From a stopped position, on the west side of Highway 67, on said Lane, defendant Goggins drove onto and across Highway 67, which at this point is a two lane highway.

Defendant Woodruff was in the employ of defendants Banks Ray, Sr., and Banks Ray, Jr., doing business as Nashville Produce Company, and was driving a truck owned by them northwardly on Highway 67. At a point south of Cantwell Lane he saw the Goggins automobile cross Highway 67 and testified he swerved to the left to avoid striking the automobile. He estimated he drove over onto the west side of the highway about 3½ feet. Alma Harris, as we have stated, was a passenger in the ambulance and had been placed on a cot therein and when the ambulance was struck by the truck, it caused her to be propelled toward the front end of the cot and knocked her feet partly off the edge of the cot. She complained of pain following the collision and was taken to the Bonne Terre Hospital where she remained until the time of her death on October 27, 1959.

We will omit a statment of defendant Goggins' version as to how the accident occurred because we feel that the verdict and judgment against him must be set aside because plaintiff's petition failed to state facts which would entitle him to relief.

It was alleged in plaintiff's petition that Alma Harris died October 27, 1959, and that plaintiff, who is the son of Alma Harris, was appointed administrator of her estate. The petition described the defendants and their alleged connection with the collision of the truck and the ambulance. The specifications of negli-

gence that allegedly caused the collision were stated in said petition. It was further alleged in said petition that, "as a result of said collision, Alma Harris suffered the following injuries all of which were permanent and progressive and all of which caused Alma Harris to suffer excruciating pain and suffering and caused her much mental anguish * * * and that said injuries caused her to be hospitalized from July 31, 1959, to the date of her death."

It was further alleged in said petition "that as a direct and proximate result of the negligence of each of the defendants, the deceased suffered injuries as hereinbefore described, and as a result of. said injuries and in the treatment thereof, deceased incurred hospital, doctor and nursing bills in the approximate amount of Two Thousand Dollars ($2000.00), and that said medical, hospital and doctor bills were paid by plaintiff upon deceased's death."

It will be observed there was no allegation that the injuries did not cause the death of Alma Harris. Plaintiff in his brief admits "there was no allegation that the injuries did not cause her death."

Thereafter, defendant Goggins filed his separate motion to dismiss plaintiff's petition which reads as follows:

"Comes now defendant Ernest (Pete) Goggins and moves the Court to dismiss plaintiff's petition as to said defendant for the following reasons:

"1. That heretofore, to-wit, on the 23rd day of November, 1959, Clifford Harris; plaintiff, filed his petition in the Circuit Court of St. Francois County, Missouri, against Charles Louis Woodruff, Ernest (Pete) Goggins, and Raymond Caldwell and David Caldwell d/b/a Raymond Caldwell and Son Funeral Service, Cause No. 16038, wherein said plaintiff claimed damages in the sum of $25,000.00 for the wrongful death of his wife Alma Harris alleged to have been occasioned by the negligence of the defendants in an au-

tomobile collision which occurred on Highway 67 near the intersection of Cantwell Lane in Cantwell, Missouri, on July 31, 1959; that thereafter, plaintiff filed his first amended petition against said defendants named together with Banks Ray, Sr. and Banks Ray, Jr. of Nashville, Arkansas, d/b/a Nashville Produce Company; that thereafter, this case was duly tried to a jury on the 18th and 19th days of July, 1960, at Farmington, Missouri, and after all of the evidence was closed, but prior to submission to the jury, the parties thereto settled said action and a stipulation for dismissal with prejudice was executed by the plaintiff's attorneys and releases to all of the named defendants were executed by the plaintiff; that said stipulation for dismissal with prejudice was filed and that judgment of the Court was rendered in accordance with said stipulation dismissing said cause at the cost of the defendants and with prejudice as to the plaintiff bringing any future action thereon; that the plaintiff executed a release to the defendant Ernest (Pete) Goggins and received as consideration therefor the sum of $5,125.00 and the plaintiff through his attorney agreed that the largest item of medical expense for the care of Alma Harris, to-wit, the hospital expenses due the Bonne Terre Hospital, Bonne Terre, Missouri, would be paid out of the proceeds of said settlement; that plaintiff's first amended petition and Case No. 16038 alleged that plaintiff incurred medical, hospital, doctor and nursing bills and the settlement made with said plaintiff included and contemplated the payment to plaintiff of said items set forth and alleged therein.

"2. That by reason of the facts set forth in Paragraph 1, the cause of action set forth in the petition filed herein has already been appropriated by the widower of Alma Harris, the decedent, in Cause No. 16038 and that by reason thereof, this instant case has been merged in the prior action and judgment of this Court.

"3. That the judgment in Cause No. 16038 entered in this Court is a bar to any further cause of action against these defendants arising out of the collision hereinabove described so far [as] injuries and medical expenses to Alma Harris are concerned and said judgment is res judicata to the bringing of Case No. 16451.

"4. That the principal, if not the sole beneficiary of the estate of Alma Harris, deceased, is Clifford Harris, the widower, and the Administrator is therefore bound by the judgment in Cause No. 16038 and Clifford Harris as beneficiary is not entitled to be unjustly enriched by reason of double compensation for the injuries to his deceased wife and expenses incurred for her medical treatment and hospital care arising out of the same collision.

"5. *That the plaintiff has not set forth facts in his petition which would entitle him to the relief prayed for therein.*" (Emphasis ours.)

All of the other defendants filed similar motions which contained the same grounds as those contained in the separate motion to dismiss plaintiff's petition filed by defendant Goggins. Each motion stated the amount paid by each group of movants to Clifford Harris in settlement of his wrongful death action. Stating it more concisely, the motions to dismiss plaintiff's petition were based upon two general grounds, (1) that a prior suit had been filed by Clifford Harris, the husband of Alma Harris, in which it was claimed that the death of Alma Harris had been occasioned by the same automobile accident and that the judgment in that case was a bar to the bringing of the instant action; and (2) that plaintiff's petition did not set forth facts which would entitle him to the relief prayed for therein.

The motions to dismiss were presented and argued before the trial court and in support of the allegations in said motions exhibits were introduced in evidence tending to prove the allegations of said motions. The exhibits consisted of the petition in the wrongful death action brought by the husband, together with other pleadings in said case, the stipulation for dismissal of said wrongful death action, and the releases which were executed by the plaintiff. Also introduced in evidence were certain letters that passed between the attorneys for the defendants and the attorneys for the plaintiff in which there was an agreement to apply certain of the proceeds of the settlement in the wrongful death action to the payment of the hospital bills. The separate motions of the defendants to dismiss plaintiff's petition in the instant case were overruled by the trial court

Thereafter, separate answers were filed by all of the defendants. In the separate answers filed by defendant Ernest (Pete) Goggins and defendants Charles Louis Woodruff, Banks Ray, Sr., and Banks Ray, Jr., doing business as Nashville Produce Company, they again pleaded the same allegations contained in their separate motions to dismiss. Defendants Raymond Caldwell and David Caldwell in their separate joint answer again pleaded the allegations contained in their separate motions to dismiss with the exception of the allegation that plaintiff "has wholly failed to set forth any facts which would entitle him to relief as against these defendants."

Separate motions to strike these allegations contained in the separate answers of the defendants were filed by the plaintiff but were not ruled on by the court. At the trial of the case and before the introduction of any evidence, all of the defendants re-offered their respective separate motions to dismiss the plaintiff's petition and all of the evidence that was adduced and introduced previously in support of their motions. The court directed that the record show the re-offer of the respective

motions to dismiss and to further show that the said motions were overruled.

At the close of plaintiff's evidence defendant Goggins filed a motion for a directed verdict and defendants Charles Louis Woodruff, Banks Ray, Sr., and Banks Ray Jr., doing business as Nashville Produce Company, filed their motion for a directed verdict. Among the grounds asserted in both motions was one in which it was alleged that plaintiff's petition did not allege facts upon which relief could be granted. Again, at the conclusion of all of the evidence, all of the defendants offered into evidence all of the record evidence which was previously submitted to the court in support of their respective separate motions to dismiss plaintiff's petition. This offer was denied by the court.

Thereafter, all of the defendants filed their respective motions for a directed verdict. Included in the motion of defendant Goggins for a directed verdict and in the joint motion of Charles Louis Woodruff, Banks Ray, Sr., and Banks Ray, Jr., doing business as Nashville Produce Company, for a directed verdict was the ground that plaintiff's petition failed to allege facts upon which relief could be granted. After the verdict of the jury defendant Goggins filed his motion to set aside the verdict and judgment entered thereon and to have judgment entered in accordance with his motion for a directed verdict or, in the alternative, for a new trial. Both, in his motion for judgment in accordance with his motion for a directed verdict, and in his motion for a new trial, this defendant again alleged that plaintiff's petition failed to allege facts upon which relief could be granted. In addition, in said motion for new trial said defendant stated that Instruction No. 1 was "broader than the pleadings in that there is no allegation in the petition with regard to the fact that the injuries sustained neither caused nor contributed to cause the death of Alma Harris." These motions were overruled by the trial court and the Goggins appeal followed.

The first point relied on by defendant Goggins is that plaintiff's petition failed to state facts which would entitle him to the relief prayed for therein, in that he did not allege that the deceased received injuries which did not result in her death. This defendant contends that the trial court erred in not sustaining his motion to dismiss which was restated in his answer and resubmitted before the introduction of evidence and was urged in his motion for a directed verdict at the close of the evidence and again in his after trial motion.

At common law no cause of action for personal injuries survived the death of the injured party. The death of either the injured party or the tort feasor extinguished the cause of action and concluded the matter. Plaza Express Company v. Galloway, 365 Mo. 166, 280 S.W.2d 17; Heil v. Rule, 327 Mo. 84, 34 S.W.2d 90; Showen v. Metropolitan Street Railway Co., 164 Mo.App. 41, 148 S.W. 135.

A statute was required to prevent the extinguishment and abatement of causes of action not only for personal injuries not resulting in the death of the injured party, but also for those resulting in death.

█ Plaintiff's authority for bringing this action is found under the provisions of § 537.020 RSMo 1959, V.A.M.S. The pertinent part of the statute provides that:

"Causes of action for personal injuries, other than those resulting in death, whether such injuries be to the health or to the person of the injured party, shall not abate by reason of his death, nor by reason of the death of the person against whom such cause of action shall have accrued; but in case of the death of either or both of such parties, such cause of action shall survive to the personal representative of such injured party, * * *."

█ As we have shown, plaintiff's only authority for bringing this action is the statute referred to and, therefore, it is incumbent upon the plaintiff to plead every fact necessary to show his right to maintain the action under the statute, Adelsberger v. Sheehy, 336 Mo. 497, 79 S.W.2d 109. This statute as shown, is in derogation of the common law and the burden is on the administrator, plaintiff herein, to establish by pleading and proof his right to maintain the action under the statute. The statute under which he proceeds gives him authority to maintain the action only if the death of his intestate was not caused by the injuries, Plaza Express Co. v. Galloway, supra; Longan v. Kansas City Railways Co., 299 Mo. 561, 253 S.W. 758. In actions under this statute, as we have said, the administrator must bring himself strictly within the statutory requirements necessary to confer the right and this must appear in his petition, otherwise it shows no cause of action. Showen v. Metropolitan Street Railway, supra; Downs v. United Railways Company of St. Louis, Mo., 184 S.W. 995; Greer, Adm'r v. St. Louis, Iron Mountain & Southern Railway Co., 173 Mo.App. 276, 158 S.W. 740.

█ This is true also of actions for wrongful death which were not cognizable at common law. The only authority for such actions is the wrongful death statutes. In the case of Nelms v. Bright, Mo., 299 S.W.2d 483, l. c. 487, the Supreme Court, quoting from the case of Chandler v. Chicago and Alton Railroad Company, 251 Mo. 592, 600–601, 158 S.W. 35, 37, said:

"A party suing under the [wrongful death] statute referred to must bring himself in his pleading and proof strictly within the statutory requirements necessary to confer the right. Otherwise his petition states no cause of action, and his proof is insufficient to sustain his judgment."

It is undisputed in the instant case that the petition of plaintiff herein did not aver that the death of Alma Harris did not result from the injuries caused by the negligence charged in the petition.

In the Showen case, supra, the court held that,

"In omitting to allege that the death of his intestate did not result from the injury, he [administrator] failed to allege a fact indispensable to his right to continue the suit. The defect was not cured by answer, and could be made the subject of an objection to the introduction of evidence." (148 S.W. 1. c. 138).

■ Plaintiff must allege that the injuries for which he is suing did not cause the death of Alma Harris. In the case of Greer, Adm'r v. St. Louis, Iron Mountain & Southern Railway Co., supra, wherein. the petition under review was practically the same as the petition in the instant case, which we will demonstrate later, the court said:

"The case of Showen v. [Metropolitan Street] Railroad, supra, is directly in point, and deals with this same statute, and holds that a petition, in all respects similar to the one in this case, does not state a cause of action, and is fatally defective. In stating a cause of action for injuries inflicted on this deceased child, it is just as essential for his personal representative to allege that the injuries inflicted did not result in his death as it is to allege that the child was injured, or that the injuries resulted from defendant's negligence. There can be no doubt but that the petition in this case is fatally defective in this respect." (173 Mo.App. 276, 158 S.W. 1. c. 743.)

■ In the Greer case the court held that the absence of an allegation in the petition that the injuries did not result in the death of the injured party rendered the petition fatally defective and that such a petition does not state facts sufficient to constitute a cause of action. For this reason the case was reversed and remanded.

In the case of Greer, Adm'r v. St. Louis, Iron Mountain & Southern Railway Co., supra, the petition, after stating the negligence charged and the injuries resulting therefrom, further stated,

" 'and that thus and thereby said Berryl was permanently injured, maimed, and disfigured, in this: That his body, belly, sides, arms, hands, and legs were burned, maimed, and permanently injured, crippled and disfigured, and that thus and thereby his health was permanently injured and impaired, and that by reason thereof said Berryl suffered until his death great physical pain and mental anguish.' " (158 S.W. 1. c. 742.)

The court in its opinion held that the above allegation, contained in the pleading, "would suggest that the injuries complained of did result in the death of this child, rather than the contrary." (158 S.W. 1. c. 743.) Obviously, if the death results from the injuries sustained, a different cause of action arises and invokes the provisions of different statutes. The court said in the Greer case that the allegation as to injuries being permanent, and that deceased suffered great physical pain and mental anguish until his death, suggested that such injuries may have resulted in his death. The court said, "In fact the severity of the injuries, as set out in the petition, would lead one to believe that they did cause the death, especially in the absence of any other cause or averment relative thereto." (158 S.W. 1. c. 744.)

Scrutinizing the petition in the instant case we find a similar averment. In the petition of the administrator in the case under review it was alleged that:

" * * * as a result of such collision, Alma Harris suffered the following injuries all of which were permanent and progressive and all of which caused Alma Harris to suffer excruciating pain and suffering and caused her much mental anguish * * * and that said injuries caused her to be hospitalized

from July 31, 1959 to the date of her death."

The similarity of the petition in this respect to the petition in the Greer case is readily observed and we agree with the holding in the Greer case that such allegations intimate and suggest that the cause of death was the injuries sustained in the collision.

■ Furthermore, the suggestion that the cause of death was the injuries sustained in the collision becomes more certain when we recall that the same defendants were defendants in the wrongful death action wherein the petition alleged that the injuries sustained in the collision caused the death of Alma Harris. Plaintiff contends that the cause was tried with the implied consent of the parties on the issue of whether the injury sustained by Alma Harris did or did not cause or contribute to her death. We cannot agree with plaintiff that there was any implied consent to a trial of that issue.

As we have pointed out, the appealing defendant Goggins at every step of the case objected to the sufficiency of the petition. Immediately before the introduction of testimony he re-offered his motion to dismiss which contained the ground that the petition failed to state facts which would entitle plaintiff to the relief prayed for. This objection was renewed at every stage of the case and was pressed in the motion for new trial and is again asserted in this court. We cannot understand plaintiff's contention that the trial of the issue of the cause of death was impliedly consented to by this defendant or the other defendants.

■ Plaintiff points to the failure of the appealing defendant to object to the evidence introduced by him to the effect that the injuries received by deceased did not cause or contribute to the death of Alma Harris. It was unnecessary for said defendant to object to the questions that elicited this testimony. First, defendant's many efforts to have the petition dismissed because it failed to allege that the death did

not result from the injuries and to have it dismissed for other reasons were overruled by the court prior to the introduction of the aforesaid testimony. Any objection at this stage of the case would have been an idle gesture. Second, when the medical witness was asked whether or not the injuries sustained by Alma Harris did actually cause or contribute to cause her death, defendant could not be charged with any knowledge of what the witness' answer would be.

■ Plaintiff further contends that the action of defendant Goggins in offering instructions advising the jury that it could not return a verdict for plaintiff if the injuries caused or contributed to cause Alma Harris' death constituted a consent to try that issue. We do not think that such consent can be implied from this action. This defendant, as well as the other defendants, were compelled to take this course in view of the court's action in overruling their motions to dismiss, and in view of the previous wrongful death action they were faced with only one alternative, that was to obtain a favorable jury verdict which would have foreclosed for all time plaintiff's right to recovery.

Plaintiff cites the case of Biehle v. Frazier, 360 Mo. 1068, 232 S.W.2d 465, in support of his contention. That case merely holds that when issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. There is no express consent apparent in the record and, as we have pointed out, no implied consent can be taken from any of the actions of the appealing defendant or the other defendants.

In further support of his contention plaintiff cites the case of Jordan v. St. Joseph Ry. Light, Heat & Power Co., 335 Mo. 319, 73 S.W.2d 205. That case lends no aid to plaintiff's contention because the opinion clearly shows that before the trial was commenced the parties had agreed that Jordan's death did not result from the injuries described in the petition and had

agreed to have the record on a new trial show that fact. (See 73 S.W.2d l. c. 212.) We have no such agreement in the record before us.

■ Defendant Goggins' verdict and judgment must be reversed and it appearing that the necessary averment to the petition can be supplied, if plaintiff desires to do so, the cause should be remanded, Nelms v. Bright, supra; Lynch v. St. Louis Public Service Co., Mo.App., 261 S.W.2d 521; Greer, Adm'r v. St. Louis, Iron Mountain & Southern Railway Co., supra, unless we find it necessary to sustain one other point raised by defendant Goggins wherein he contends that the judgment of the Circuit Court in the prior case of Clifford Harris (widower of Alma Harris) against the same defendants for the wrongful death of his wife acted as a bar to the maintenance of the instant action by reason of appropriation, estoppel, merger and res judicata.

As shown in defendant Goggins' motion to dismiss plaintiff's petition, a wrongful death action was filed by Clifford Harris, widower of Alma Harris, deceased. This action was filed by the attorneys who now represent plaintiff in the instant case. Plaintiff in the wrongful death action claimed damages in the sum of $25,000. It is sufficient to state that all of the allegations contained in defendant Goggins' motion to dismiss plaintiff's petition in the instant case were supported by documentary evidence which was admitted by the trial court at the hearing on the motion to dismiss plaintiff's petition, and again the same evidence was offered at the beginning of the trial of the case and before the introduction of any evidence, when defendant Goggins and the other defendants re-offered their respective separate motions to dismiss the plaintiff's petition. Obviously, in the wrongful death action it was alleged in the petition that Alma Harris suffered injuries that caused or contributed to cause her death on October 27, 1959.

The wrongful death action proceeded to trial as indicated in defendant Goggins' motion to dismiss plaintiff's petition and after all the evidence was in, but prior to submission to the jury, the parties settled the case and the wrongful death action was dismissed by plaintiff (widower) with prejudice.

A total of $7000 was paid by the defendants in the wrongful death action to the widower, of which defendant Goggins contributed $5125.

■ Defendant Goggins contends that the dismissal with prejudice operated as an adjudication upon the merits. There is no doubt about the validity of this contention. Civil Rule 67.03, V.A.M.R., clearly provides that a dismissal with prejudice operates as an adjudication upon the merits.

Defendant Goggins seeks to apply the doctrine of res judicata to this action, alleging that there is a privity of interest existing between Clifford Harris, widower, and Clyde Harris, administrator, who is the son of Alma Harris, deceased. He also seeks to invoke the doctrine of virtual representation and cites authorities wherein the doctrines relied upon by him were examined and applied.

There is no doubt that an anomalous situation is presented here in which the defendant Goggins may be subjected to "double liability." We say this because of what was said by the Supreme Court in the case of Plaza Express Company v. Galloway, supra. That case was an action in the nature of a bill of interpleader to require a decedent's widow and the administrator of his estate to interplead and have adjudicated the issue whether decedent's death resulted from injuries alleged to have been caused by plaintiff's negligence and to restrain defendants from prosecuting suits against plaintiffs as defendants therein for such death and injuries.

The opinion shows that at the time of the interpleader action two other actions were pending. Bert Galloway brought an

action for $20,000 damages for the alleged personal injuries sustained by him due to the alleged negligence of defendants. Plaintiff in that action died and thereafter plaintiff's widow brought an action against the same defendants for the wrongful death of Bert Galloway, her husband, alleging that the injuries sustained by him in the accident resulted in his death. Subsequent to the death of Bert Galloway, Randel E. Galloway was appointed administrator of his estate and was substituted as plaintiff in the original action brought by Bert Galloway for injuries sustained by him due to the alleged negligence of the defendants. In the interpleader action the defendants in the two aforesaid actions were plaintiffs and they joined as defendants the plaintiffs in the two actions referred to. It was contended in the interpleader action that,

"the claims of the two plaintiffs are such that the plaintiffs (defendants in each of the above-mentioned suits) 'are, or may be, exposed to double or multiple liability, in the absence of a prior determination of whether or not the death resulted from the injuries alleged' to have been sustained in the collision in June 1951; * * *.' " (365 Mo. 166, 280 S.W.2d 1. c. 20).

The Supreme Court in summing up the pleadings said:

"Now there can be no doubt that instant defendants do have claims against present plaintiffs. One claim is for $20,000 and the other for $15,000 damages. The sole remaining question, then, is whether, under the facts stated in their bill, plaintiffs may be, in fact, subject to two recoveries for a single liability, for which single liability they are legally subject to only one recovery." (280 S.W.2d 1. c. 21.)

In answering that question the court said:

"Both the administrator and the widow are (unless plaintiffs may obtain relief in their present action) entitled to proceed with their respective separate claims and, not only may each separately proceed but, unless a judgment for plaintiff in either of those actions would be res judicata of the other action, each may recover and be entitled to have satisfied his or her separate judgment." (280 S.W.2d 1. c. 22.)

In that action the court was careful to point out that the widow and the administrator were different persons and made it clear that it did not decide the question of whether a widow or an administrator, if they were the same person, would be bound by the litigation of and the determination in either action of the fact issue of whether death did or did not result from the injuries. Also it made it clear that it did not reach the question or decide whether the widow or administrator would be bound by a judgment in an action by either, even where they were different persons, where the widow or other person or persons who brought the wrongful death action is or are the sole beneficiaries of the two actions, "in other words, a situation wherein the beneficiary or beneficiaries of the two actions are the same person or persons." (280 S.W.2d 1. c. 23.)

The Supreme Court made it clear that in ruling on whether or not the doctrine of res judicata applies, it was treating the facts in the instant case as presenting a situation wherein the widow and the administrator are different persons and the beneficiaries of the two actions are not the same person. With those facts in mind the court said:

"Under these facts, we are aware of no principle, and none has been pointed out, in the doctrine of res judicata by which a judgment in either of the pending damage actions would bar the other, or by which either party-plaintiff would be estopped by a verdict or judgment in the other case as to any fact issue litigated in such other case. Specifically, if the widow recovered a

judgment in her action, or if the administrator recovered a judgment in his action, even though the fact issue in each action as to whether deceased's injuries did or did not result in his death would have been litigated and determined, the judgment in neither action would bar the maintenance of the other, nor would the widow or the administrator be bound in her or his respective action by the determination of such fact issue in the other action. This, because the widow and administrator are different persons and are not in privity with each other. Their interests are necessarily adverse. * * *

"We must conclude, therefore, that instant plaintiffs 'may be exposed to double * * * liability' within the meaning of Section 507.060." (280 S.W.2d 1. c. 23.)

We are aware that the interpleader action brought by plaintiff in the Plaza Express Company case was brought "for the purpose of determining who has and owns the claim arising from the alleged negligence of plaintiffs resulting in the injuries sustained by Bert Galloway on June 27, 1951." (280 S.W.2d 1. c. 25.) In this connection the court said: "Who in fact owns the claim depends on whether plaintiffs' acts and the injuries resulting therefrom to Bert Galloway produced death." (280 S.W.2d 1. c. 25.) And we are further aware that the court said:

"When the ownership of the claim or cause of action for the injuries, or the injury and death of Bert Galloway has been determined, the owner thereof may proceed therewith as an action at law in the court in which the claim is pending and the other claimant must be enjoined from proceeding further with his or her claim." (280 S.W.2d 1. c. 25.)

Obviously, the Supreme Court held in the facts before it in the Plaza Express case that the defendants were not permitted to proceed with their respective separate actions wherein each was plaintiff with the possible double liability of plaintiffs in the interpleader action, which means that double liability may be avoided where the facts permit the filing of an interpleader action wherein the cause of the decedent's death may be determined. However, where the facts do not permit the filing of an interpleader action, as here, where the wrongful death suit has been filed, settled and finally disposed of and only the administrator's claim remains, we feel that what was said in the Plaza Express case permits the plaintiff herein to prosecute his cause of action. We are mindful that the husband (widower) may be a beneficiary in the proceeds in the Estate of Alma Harris, but inasmuch as the record clearly shows that he is not and will not be the sole beneficiary of the proceeds in the two actions and that the administrator who is the son of the decedent will be a beneficiary in the proceeds, if any, from the instant action, we feel that in view of the express language of the Supreme Court in the Plaza Express case we have no other course than to hold that the administrator and the widower of Alma Harris are not in privity with each other and that, therefore, there was no appropriation of plaintiff's action by the widower, nor was the court's judgment in the wrongful death action a bar to the bringing of the instant action.

We now turn our attention to the appeal of plaintiff from the verdict and judgment of the jury in favor of all defendants except defendant Goggins. The sole contention made by plaintiff, with reference to the verdict and judgment in favor of defendants Raymond Caldwell and David Caldwell, is that the trial court erred in giving Instruction No. 5 to the jury at the request of said defendants for the alleged reason that said instruction does not hypothesize sufficient facts showing a sole cause situation.

Before discussing this contention made by plaintiff we find it necessary to discuss

a contention made by defendants Raymond Caldwell and David Caldwell in which they state that any alleged error in the giving of Instruction No. 5 would be harmless because plaintiff did not make a submissible case against these defendants on the theory of excessive speed. The only submission of negligence of these defendants was contained in Instruction No. 4 which hypothesized the facts leading up to the collision and then told the jury, "if you further find that defendant Caldwell by operating his ambulance at a speed of thirty to thirty-five miles per hour under the circumstances then and there existing failed to exercise the highest degree of care in the operation of his ambulance" to return a verdict in favor of plaintiff and against defendants Caldwell.

■ The sole evidence concerning the operation of the ambulance prior to the collision and at the time of the collision shows that Goggins came to a stopped position at a stopsign on the west side of Highway 67 on Cantwell Lane in St. Francois County, Missouri at which time the ambulance was approximately 200 to 250 feet north of Goggins' automobile. The speed of the ambulance at this point was approximately 40 to 45 miles an hour. David Caldwell, driver of the ambulance, said he saw the Goggins automobile stopped at the intersection at which time he took his foot off the accelerator and proceeded down the highway. When he was about 150 feet from the point where Goggins crossed the highway he saw Goggins' car start forward. After he took his foot off the accelerator the speed of the ambulance was reduced to about 30 to 35 miles per hour. He did not see the truck that Woodruff was driving until it was 25 to 30 feet from him at which time the left side of the truck was about 3 feet over the center line of Highway 67 in the lane for southbound traffic. All of the evidence shows that David Caldwell made an effort to avoid the collision by swerving to the right side of the road. He had the front wheels on the shoulder of Highway 67 and as he said the

"ambulance was angling and had swerved to the right at the time the impact took place." Caldwell said he had a clear and full view of the intersection before he got to it. The record shows that the weather was clear and dry. It was obvious that David Caldwell was familiar with the area and the intersection. The exhibits in evidence and the testimony show that Highway 67 was fairly straight for a good distance north and south of the intersection and the point of collision. There was no evidence that the ambulance was exceeding any statutory speed limit or posted speed limit. Plaintiff in his petition admits that Highway 67 was a U. S. Highway.

The ambulance was struck by the truck before it (the ambulance) reached the intersection and at a point north of the intersection. The aforesaid facts concerning the operation of the ambulance prior to and at the time of the collision are undisputed in the record.

It is difficult for us to see how a rate of speed of 30 to 35 miles per hour under the circumstances related could in any manner support a finding of negligence by the driver of the ambulance. As shown by the evidence Highway 67 was an interstate highway of concrete construction and was fairly straight for a considerable distance north and south of the intersection of Highway 67 and Cantwell Lane. As we have pointed out, there was no evidence of any violation of a statutory speed law or of any posted speed limit in the vicinity of the intersection or near the point of collision. David Caldwell, driver of the ambulance, was familiar with the area of the intersection. The weather was clear and dry and David Caldwell had a clear and full view of the intersection and the area between the ambulance he was driving and the intersection. Under a somewhat similar state of facts in the case of Pitts v. Garner, Mo., 321 S.W.2d 509, the court concluded it had not been satisfactorily demonstrated that one of the defendants, driver of an automobile involved in a colli-

sion, was negligent by reason of excessive speed. We fail to see under the state of facts in the case before us how the speed of the ambulance, as submitted in Instruction No. 4, could be the cause or contributing cause to the collision that took place. We agree that plaintiff made no submissible case against Raymond Caldwell and David Caldwell on the theory of excessive speed.

However, the contention made by the plaintiff that the trial court erred in giving Instruction No. 5 lacks substance. It is unnecessary to recite the entire instruction. It is sufficient to state that the instruction did hypothesize certain undisputed facts which contained a general statement of the circumstances of the collision and then told the jury if it found "that the said collision was not caused by the negligence of the driver of the ambulance as submitted to you in other instructions, then your verdict shall be in favor of defendants Raymond Caldwell and David Caldwell and against plaintiff."

Plaintiff concedes in his brief that the facts hypothesized were undisputed. Plaintiff is in error when he characterizes this instruction as a "sole-cause" instruction. The instruction complained of by plaintiff is a converse of plaintiff's principal verdict-directing instruction. We recognize that if defendants undertake to submit a sole-cause situation, in order to absolve themselves of liability, they assume the burden of hypothesizing a statement of facts, supported by the evidence, from which a jury could find that not only did said defendants' negligence not contribute to cause plaintiff's injuries, but in addition thereto that the sole proximate cause of plaintiff's injuries was the negligence of someone other than themselves, and the hypothesization of facts in the instruction, or by proper reference to other instructions, must be complete in both respects. Happy v. Blanton, Mo., 303 S.W.2d 633. But, as stated, this is not a sole-cause situa-

tion and as said in Happy v. Blanton, supra:

"A defendant may undertake to absolve himself of liability on the ground that he was not negligent in the respects charged in plaintiff's instructions, and he may submit this issue to the jury by what it referred to as a converse instruction, which by its nature does not call for the hypothesization of facts to show that the injuries of the plaintiff resulted from the negligence of someone else." (303 S. W.2d 1. c. 637.)

In the case of Rhinelander v. St. Louis-San Francisco Ry. Co., Mo., 257 S.W.2d 655, defendant hypothesized in an instruction, in greater detail, facts which came much closer to submitting a sole-cause situation than does the instruction before us. Despite this the court held that it was not a sole cause instruction and that it was a converse instruction and, therefore, it did not submit an affirmative defense adding, "It, therefore, is not necessary to submit facts as it is in a sole cause instruction." (257 S.W.2d 1. c. 658.) It is true that it may have been unnecessary for defendant Raymond Caldwell and David Caldwell to submit some of the facts leading up to the collision but, as plaintiff has conceded, these facts were not disputed and we fail to see how they could have confused or misled the jury in any manner if a submissible case of excessive speed had been made. We feel that the jury understood the instruction to mean that if the defendants Caldwell were not negligent as submitted in plaintiff's instruction, then its verdict must be for the Caldwells.

In plaintiff's appeal from the verdict and judgment in favor of Charles Woodruff, Banks Ray, Sr., and Banks Ray, Jr., doing business as Nashville Produce Company, he complains about two instructions. In his first complaint he contends the court erred in giving Instruction No. 10 at the request of these defendants for

the reason that said instruction does not hypothesize sufficient facts showing a sole cause situation in that the evidence in the case does not show a sole cause situation existing. The record evidence concerning the operation of the truck prior to and at the time Goggins crossed Highway 67 in front of the truck is indeed meager.

Goggins testified that when he was stopped on the west side of Highway 67 on Cantwell Lane he saw the truck to the south of him traveling north, at which time he thought the truck was approximately 250 feet away. He thought the truck was traveling at that time 40 to 45 miles an hour. When he was asked if he looked again to his right to see if the truck was approaching after he started from his stopped position, he answered, "Close enough. I saw him coming, yes." There is nothing in this answer to show just where the truck was when Goggins looked again. As we have pointed out in connection with the appeal of plaintiff from the verdict and judgment in favor of Raymond Caldwell and David Caldwell, David Caldwell did not see the truck until it was 25 or 30 feet away from him, at which time it was three feet across the center line of the highway.

Robert Underwood, a witness who claimed to be at the intersection, testified the truck was real close to the Goggins automobile when he first saw it and that the brakes on the truck were applied and the truck swerved to the left side of Highway 67.

Leroy McKinney who was the driver's helper in the ambulance testified he saw Goggins' automobile pull across the highway "clearing the lane in front of the ambulance, pulling directly across in front of the truck." When asked how close the Goggins car was to the truck he said, reasonably close "15, 20 feet."

Woodruff testified that when he first swerved to the left the Goggins automobile had probably crossed the center line of Highway 67. When asked if he could have stopped the truck in less than 50 feet he said, "I believe so" but added that this did not include reaction time.

Woodruff further testified that he was driving between 20 and 25 miles an hour and that about 100 yards south of the intersection he was operating his truck at that speed and said he was pretty close to the intersection when he first saw the Goggins automobile start across the highway. He thought about 15 or 20 feet separated his truck from the Goggins automobile, at which time Goggins' car was in the southbound lane going east. He said he applied his brakes and swerved to the left. He further said he was unable to slow the truck enough to avoid sideswiping the ambulance. The truck which he was driving had brakes on all wheels and when he started turning and swerving he applied the brakes "on full" and kept them on full all of the time. He could not tell in what distance he could stop his truck driving at a speed of 25 miles an hour. He further said the rear end of Goggins' automobile was still on Highway 67 when he passed it.

We said, when discussing plaintiff's appeal from the judgment in favor of the Caldwells, that a sole cause instruction must hypothesize facts supported by evidence from which a jury could find that not only did said defendants' negligence not contribute to cause plaintiff's injuries, but in addition thereto that the sole proximate cause of plaintiff's injuries was the negligence of someone other than themselves and the hypothesization of facts in the instruction, or by proper reference to other instructions must be complete in both respects, citing Happy v. Blanton, supra.

We feel it unnecessary to recite the instruction in toto. We think the two principal requirements called for in a sole cause situation have been satisfied in Instruction No. 10. This instruction told the jury, inter alia, "that if you find from the evidence that defendant, Ernest (Pete) Gog-

gins, drove onto Highway No. 67 from Cantwell Lane at the time mentioned in the evidence and at a time when the truck being driven by defendant, Charles Louis Woodruff, was approaching so closely on Highway No. 67 as to constitute an immediate hazard of collision; * * *" and if it found the above to be true and that defendant Goggins failed to exercise the highest degree of care and if it further found that defendant Charles Louis Woodruff was not guilty of the primary negligence submitted under the other instructions, then and in that event if the jury found that the negligence of Pete Goggins as above submitted was the sole direct cause of the collision between the truck and the ambulance, it was instructed to find the issues in favor of Charles Louis Woodruff, Banks Ray, Sr., and Banks Ray, Jr., d/b/a Nashville Produce Company and against the plaintiff. Plaintiff makes no point about the instruction failing to hypothesize the possible negligence of defendants Raymond Caldwell and David Caldwell. However, inasmuch as we have found that there was no negligence properly submitted as to these defendants, such omission in the instruction need not be considered. The language of the instruction which told the jury that if they found that "defendant, Charles Louis Woodruff, was not guilty of negligence under the other instructions submitted," has been held to be sufficient to satisfy the requirement that the jury find the defendants free of negligence as charged. Happy v. Blanton, supra, 303 S.W.2d l. c. 639.

The negligence of Goggins as set out in Instruction No. 10 is virtually the same specification of primary negligence submitted to the jury by plaintiff in his Instruction No. 1, wherein the jury was instructed to find in favor of plaintiff if Goggins drove his "automobile onto said highway and into the path of defendant Woodruff's automobile at a time when defendant Woodruff's vehicle was approaching at such a speed and so close thereto as to constitute an immediate hazard and at a time when said highway was not sufficiently free from approaching vehicles to permit defendant Goggins to cross said highway without danger of collision, * * *." As stated, we think this instruction contains the principal elements necessary to constitute a good sole cause instruction and was supported by the evidence. This contention of plaintiff must be overruled.

The final complaint of plaintiff is that Instruction No. 9, which attempted to instruct on the emergency doctrine, given at the request of defendants Woodruff et al., "fails to require a finding as to the degree of care Woodruff was exercising prior to the time he swerved his vehicle and fails to hypothesize or negate plaintiff's submission of failing to slow or stop his vehicle." Instruction No. 9 was as follows:

"The Court instructs the jury that if you find and believe from the evidence that Alma Harris was riding in an ambulance being operated in a southernly direction on Highway 67, and that defendant, Charles Louis Woodruff, was driving a truck in a northernly direction on Highway 67 at the time and place mentioned in the evidence, and that Defendant Woodruff's truck turned to the west of the center line of said highway and the truck being driven by Defendant Woodruff and the ambulance collided;

"Nevertheless, if you further find and believe from the evidence that an automobile being operated by Ernest (Pete) Goggins on Cantwell Lane entered the intersection of Cantwell Lane and Highway 67 and came into the path of the truck being driven by Defendant Woodruff and so close to Defendant Woodruff's truck that there was imminent danger of collision between the automobile of Goggins and the truck driven by Woodruff, and if you find that Defendant Woodruff was thereby confronted with a sudden emergency, with no time to deliberate,

if you so find, then the Court instructs you that Defendant Woodruff was only required to exercise that degree of care that a very careful and prudent person would exercise under the same or similar circumstances, and if you find he did exercise such degree of care in turning his truck to the west of the center line of Highway 67, under the circumstances aforesaid, then the Court instructs you Defendant Woodruff was not negligent."

Plaintiff points out that in his Instruction No. 2 two charges of negligence were submitted against defendant Woodruff. These charges were that "defendant Woodruff either saw or, by the exercise of the highest degree of care, could have seen the vehicle driven by Goggins drive onto Highway 67 in time thereafter for defendant Woodruff to have either slowed or stopped his vehicle and by so stopping or so slowing, if you so find, defendant Woodruff would not have had to swerve his vehicle across the center line to avoid a collision with the Goggins vehicle, * *."

Plaintiff points out that defendants' Instruction No. 9 completely ignored the issues submitted in his Instruction No. 2 and only required the jury to find that Woodruff in turning his vehicle after the sudden emergency arose exercised the highest degree of care. It is the contention of plaintiff that the negligence submitted in his Instruction No. 2 relates to actions of Woodruff prior to the time there was imminent danger of collision. He states that it has been held that the emergency doctrine has no application and may not be invoked after the emergency arose wholly or partially from negligent acts of the defendant, citing Rohde v. St. Louis Public Service Company, Mo., 249 S.W.2d 417. While this point has not been raised by defendants Woodruff et al., it appears to this court that plaintiff would be hard pressed, if required, to show that the evidence supported the submission of negligence as stated in his Instruction No. 2. However, in view of our holding, we find no need to raise this question or pursue it.

■ Defendants Woodruff et al., acknowledge that Instruction No. 9 should require a finding that Woodruff was free of any negligence which contributed to cause the emergency. However, they contend that while it may have been error to exclude such a finding in the instruction, it was not prejudicial error and they give as their authority the holding in the case of Boatright v. Bruening, 363 Mo. 494, 251 S.W.2d 709.

In the Boatright case plaintiff was injured while riding in a car, owned and driven by a fellow employee. Plaintiff and the fellow employee were proceeding northwardly on California Street in St. Louis 20 to 25 miles per hour. Defendant was driving southwardly, also about 20 to 25 miles per hour, and when defendant's car was about 25 feet from the car in which plaintiff was a passenger it came across the white line in the center of the street and struck the car occupied by plaintiff. Defendant contended that an automobile coming toward him attempted to pass the automobile in which plaintiff was riding and in doing so came over on defendant's side of the road. Defendant swerved to his left and into the line of the northbound traffic and drove his automobile into and against the automobile in which plaintiff was riding. It was the defendant's contention that an emergency was created and as a result he submitted an instruction in which he attempted to instruct on the emergency doctrine. As will be noted, the facts in the Boatright case are somewhat similar to the facts in the instant case.

Defendant's instruction in the Boatright case, submitting the emergency as a basis of a finding by the jury that he was not negligent, omitted a finding that defendant's negligence, if any, did not contribute to the creation of the emergency situation. In the Boatright case the jury returned a verdict for defendant and the only question for decision on appeal was the suffi-

ciency of the aforesaid instruction submitting the alleged emergency. In that case, as in the instant case, a sole cause instruction was submitted at defendant's request which hypothesized the same facts as the instruction on the emergency doctrine and which required the jury to find that the negligence of the driver of the third car was the sole cause of the collision and it also required a finding "that defendant did not commit any act of negligence submitted to you in other instructions." (251 S.W.2d 1. c. 711.) The instruction under review by the Supreme Court was No. 3 and in referring to this instruction the court said that it made "no requirement for finding that defendant was driving with the highest degree of care prior to the emergency or that defendant's conduct did not contribute to cause the emergency, which would be a proper and usually an essential element of an emergency instruction." (251 S.W. 2d 1. c. 711.) It pointed out that the instruction emphasized the idea of determining negligence on what was done after the emergency arose and said there was evidence of prior inattentiveness on the part of defendant. The court in holding the instruction good said:

"* * * we think instruction No. 3 herein hypothesizes facts which, under the circumstances of this case, would exclude any negligence of defendant in creating the emergency. In other words, if the jury found the facts to be as hypothesized in instruction No. 3, then defendant's prior negligence (which could only have been inattentiveness) could not have caused or contributed to cause the emergency. This is true because plaintiff's own evidence showed that defendant was driving on the right side of the road and at a reasonable rate of speed prior to the emergency. Therefore, defendant's inattentiveness would not have been a contributing cause of the emergency if the facts were that a third automobile 'was attempting to pass the automobile in which plaintiff was riding, and that said automobile pulled over to the west side of California and directly into the path of defendant's automobile and so close to defendant's automobile that there was imminent danger of collision between said automobile and defendant's automobile, and * * * that defendant was thereby confronted with a sudden emergency, with no time to deliberate.' These facts would show the creation of an emergency solely by the acts of a third party so suddenly that nothing defendant did or failed to do could have contributed to cause it; and thus would exclude any reasonable inference of negligence on the part of defendant in creating the emergency. See Lukitsch v. St. Louis Public Service Co., Mo.Sup., 362 Mo. 1071, 246 S.W.2d 749." (251 S.W.2d 1. c. 712.)

The factual situation in the Boatright case, as we have pointed out, is practically the same as in the instant case. Frankly, as we said, it is difficult to see any negligence on the part of the operator of the truck prior to the time Goggins crossed the highway, at which time the evidence shows defendant Woodruff's truck, traveling at a speed of 20 to 25 miles per hour, was within 20 feet of the path of the Goggins car. There can be little doubt but that an emergency was created when Goggins drove onto Highway 67 and into the lane in which Woodruff was operating his truck. Nothing defendant Woodruff did or failed to do prior to the emergency could have caused or contributed to cause the emergency arising from Goggins' action. For this reason, as stated in the Boatright case, supra, the failure of the instruction to exclude defendant's negligence could not have been prejudicial.

In conclusion we should say that we are aware brevity in opinion writing is a desirable goal and that prolixity should be avoided, but not always are matters well said that are soon said. We have extended our opinion, especially in answer-

ing the questions raised by the appeal of defendant Goggins, because of the anomalous situation presented wherein said defendant may be subject to "double liability."

That part of the judgment of the court below which was entered in favor of the plaintiff against defendant Goggins in the sum of $5500 is reversed and the cause as to said defendant is remanded with directions to permit plaintiff to amend his petition in the respect indicated in this opinion and if he does so to have a retrial on all issues as to said defendant. The judgment in favor of all other defendants is affirmed.

FRANK W. HAYES and RAY E. WATSON, Special Judges, concur.

## ON MOTION FOR REHEARING, OR IN THE ALTERNATIVE TO TRANSFER TO THE SUPREME COURT

### PER CURIAM.

Defendant Ernest (Pete) Goggins in his motion for rehearing, or in the alternative to transfer the cause to the Supreme Court strongly urges, in addition to other contentions, that Clifford Harris, husband of Alma Harris, deceased, "was the person in actual control of both actions, the person who stood solely to benefit by the maintenance of the first action, the person who made possible by his conduct the bringing of the second action, and the person who stands to benefit by receiving the greater portion of the proceeds of the second action."

In this connection he asserts that the holding that the beneficiaries in both actions are not the same is merely a colorable distinction and without substance. He contends that after Clifford Harris receives his allowances out of the estate of the decedent, any sum recovered would be practically, if not entirely, exhausted. Therefore, he reasons from this, that Clifford Harris is the prime, "if not the sole," beneficiary of all of the litigation and that any other con-

struction is a legal fiction and a mere sham. As the opinion indicates, the case has been sent back to the trial court for retrial. We have no way of knowing whether or not plaintiff will again obtain a judgment, and if he does, how much the judgment will be and whether or not the allowances that Clifford Harris would be entitled to receive out of the decedent's estate would exhaust the estate. In this respect we see no difference between the monetary situation in the instant case and that which confronted the Supreme Court in the Plaza Express Company case. The record we have before us indicates that Clifford Harris will not be the *sole* beneficiary of the proceeds in the two actions and that the administrator, who is the son of the decedent, will be a beneficiary in the proceeds, if any, from the instant action.

There is nothing in the record to support the assertions of defendant Goggins that Clifford Harris "was the person in actual control of both actions * * * (and) the person who made possible by his conduct the bringing of the second action." At least, there is nothing in the record to show that Clifford Harris was the person in actual control of the instant action. We do not understand what defendant Goggins means by his statement that Clifford Harris by his conduct made possible the bringing of the instant action.

In his original brief defendant Goggins contended that there was privity existing between Clifford Harris, surviving spouse, and Clyde Harris, administrator, who was the son of Clifford Harris. We think a sufficient answer to this is contained in our opinion when we quoted from the Plaza Express Company case, wherein the Supreme Court held that the surviving spouse and administrator in that action were different persons and were not in privity with each other, stating that their interests were necessarily adverse. While the opinion in that case does not show the relationship of Randel E. Galloway, the duly appointed administrator of the Bert Galloway Estate, to the decedent, it seems obvious he was in

some way related to the deceased and to Lola E. Galloway, the widow of the deceased. Whatever the relationship may have been, the Supreme Court held in the Plaza Express Company case that "their interests are necessarily adverse."

 We feel that what was said in the Plaza Express Company case has not been questioned or overruled by any subsequent decision of the Supreme Court; therefore, under Article V, Sec. 2 of the Constitution of Missouri it is a controlling decision and we are required to follow it. We made it very clear in that part of our opinion wherein we commenced the discussion of the Plaza Express Company case that the factual situation in the instant case raised an anomalous situation wherein defendant Goggins may be subjected to "double liability." As is shown in our analysis of the Plaza Express Company case, it was an interpleader case and did not present a factual situation such as is present in the instant case. If the law is permitted to remain as we find it in our opinion, it presents, as appellant Goggins states, an "insurmountable obstacle" for the settlement of any death claim. If a wrongful death action is filed by the surviving spouse and settled, there remains the possibility that the defendants in the wrongful death action may be subjected to a claim by an administrator contending that the deceased received injuries which did not result in her death. Such permissible action under the law could encourage collusion between the surviving spouse and others who may be heirs of the decedent or in complete honesty the parties may differ as to the cause of death, thereby using the law for possible double recovery against the defendant. Because of the obvious injustice that may result and the great public interest and general importance of the question involved to the Bench, Bar and the public, this cause should be transferred to the Supreme Court for a re-examination of the law. Therefore, after opinion, and during the pendency of defendant's motion for rehearing and in the alternative for transfer of the

cause to the Supreme Court of Missouri, and in accordance with Article V, Sec. 10 of the Constitution of Missouri 1945 and Rule 84.05(g) of the Supreme Court, the court on its own initiative doth order that the cause be and the same is hereby transferred to the Supreme Court because of the general interest and importance of the question involved in the cause and for a re-examination of the existing law in the light of the circumstances of this cause.

RUDDY, Acting P. J., and FRANK W. HAYES and RAY E. WATSON, Special Judges, concur.